FOWLER *et al.* v. LATHAM *et al.*

No. 15436. JUNE 6, 1946. REHEARING DENIED JULY 5, 1946.

*S. T. Allen* and *R. B. Blackburn,* for plaintiffs.

*Thomas E. McLemore* and *J. V. Poole,* for defendants.

JENKINS, Presiding Justice. (After stating the foregoing facts.) Under the record now before us, three questions present themselves: First, did the plaintiff comply with the adjudication of this court by introducing sufficient evidence to go to the jury with respect to the execution of the alleged original unrecorded deed from Mrs. McDonald to G. W. Latham, wherein the interest of G. W. Latham was limited to a life estate with remainder over to his children, the plaintiffs in this case? Second, if the existence of such original deed should be taken as established in the mind of the jury, did W. T. Latham and his widow, to whom the land was assigned as a portion of her year's support, have actual knowledge of the existence of any such previous unrecorded deed to G. W. Latham when he, W. T. Latham, acquired title from G. W. Latham? Third, did F. A. Quillian Sr., as executor of the Tuck Estate, take the loan deed from W. T. Latham with such notice or knowledge of the existence of the prior unrecorded deed to G. W. Latham as would bind the estate which he represented as executor, so as to authorize the court to restrain further proceedings in the foreclosure of its lien?

■ "The existence of a genuine original is essential to the admissibility of a copy. The amount of evidence to show such existence must vary with the circumstances of each case. Where no direct issue is made upon the fact, slight evidence·shall be sufficient." Code, § 38-214. In *Procter & Gamble Co.* v. *Blakely Oil & Fertilizer Co.,* 128 *Ga.* 606, 619 (57 S. E. 879), this court in

discussing the measure of proof required to establish the validity of a deed in existence, and of the existence of a lost deed used this language: "If the original deed remained in existence, proof of the handwriting, added to its being in possession of the grantee, would, it is presumed, be prima facie evidence that it was sealed and delivered. . . But the deed is lost, and positive proof of the handwriting is not to be expected or required; the grantee must depend on other proof." In the case just mentioned, the court goes on to quote language used by Mr. Justice Campbell as follows: "We agree that the rule of law which requires the best evidence within the power or control of the party to be produced should not be relaxed, and that the court should be satisfied that the better evidence has not been wilfully destroyed nor voluntarily withheld. But the rule on the subject does not exact that the loss or destruction of the document of evidence should be proven beyond all possibility of a mistake. It only demands that a moral certainly should exist that the court has had every opportunity for examining and deciding the cause upon the best evidence within the power or ability of the litigant." After this quotation from Justice Campbell, the court went on to say: "In our opinion, as already intimated, the circumstantial evidence relied on to show the existence of a genuine original of the copy agreement for arbitration was sufficient to authorize the introduction of such copy in evidence. Of course, the admission of this document in evidence would not preclude the defendant from contesting the existence of a genuine original agreement for arbitration, but this, like all other issues of fact arising in the case, would be for the jury upon the whole evidence before them."

Turning now to the instant case, we think that it clearly appears that the plaintiffs introduced sufficient evidence (which is set forth in the statement of facts) to enable them to go to the jury on the question of the existence of the alleged lost deed; that, therefore, the secondary evidence became admissible; and that the court was in error in holding that the plaintiff had failed to submit sufficient evidence as to the existence of the alleged lost deed.

■ The evidence was sufficient to present a jury question as to whether W. T. Latham and his wife, who as his widow claims by virtue of an allotment of a year's support, had actual knowledge that his grantor, G. W. Latham, was clothed with only a life estate in the property when he, W. T. Latham, received his deed.

■ To reach a conclusion as to the knowledge which F. A. Quillian Sr., as executor of the Tuck Estate, may have had with respect to the existence of a prior unrecorded deed, such as would bind the estate he represented, it is necessary to examine the subject of notice and knowledge as applied to the relationship of principal and agent. While it can not be said that an executor or an administrator of an estate is an agent of the heirs in the broadest meaning of the term, nevertheless it has been said by this court in *Fussell* v. *Dennard*, 118 *Ga.* 270, 272 (45 S. E. 247), that "the administrator is an agent with limited authority." His is a fiduciary relationship calling for strict compliance with the duties and trust imposed; and therefore the rules of law governing notice or knowledge as between a principal and agent would have proper application to the relationship of an executor, or administrator with the will annexed, and the heirs of an estate. The general principles of notice or knowledge as between principal and agent have been set forth in *Bean* v. *Barron*, 176 *Ga.* 285 (2) (168 S. E. 259), as follows: "The law imputes to the principal, and charges him with, all notice or knowledge relating to the subject-matter of the agency which the agent acquires or obtains while acting as such agent and within the scope of his authority, or which he may previously have acquired, and which he then had in mind, or which he had acquired so recently as to reasonably warrant the assumption that he still retained it; provided, however, that such notice or knowledge will not be imputed: 1. Where it is such as it is the agent's duty not to disclose, and 2. Where the agent's relations to the subject-matter, or his previous conduct, render it uncertain that he will not disclose it, and 3. Where the person claiming the benefit of the notice or those whom he represents, colluded with the agent to cheat or defraud the principal."

While there is evidence, which the jury could have accepted, that F. A. Quillian Sr. drew the alleged original unrecorded deed from Mrs. McDonald to G. W. Latham, which conveyed the property in question to G. W. Latham for his lifetime with remainder over at his death to his children, and that he witnessed it as a notary public, and while there is additional evidence that he witnessed as notary public the second deed, executed about 10 years later from Mrs. McDonald to G. W. Latham, in which the same property was conveyed to the grantor in fee, and while it appears that he wit-

nessed the subsequent deed from G. W. Latham to W. T. Latham, in which the same property was conveyed in fee;—nevertheless, there appears to have been a lapse of sixteen years between the date of the alleged execution of the original deed, dated January 31, 1902, and his act as executor of the Tuck estate, on October 18, 1918, in taking a security deed on the property involved.

While there is nothing disclosed by the record going to indicate fraud or collusion on Quillian's part, such as would prevent knowledge on his part to be chargeable to the estate that he represented, it is nevertheless manifest that, in order to assume that he took the loan deed with actual present knowledge and recollection of the existence of any previous unrecorded sixteen-year-old deed, would be to assume, not only that he jeoparded the funds of the estate which he represented, but that he took a grave personal risk to himself. And since it is clear that any knowledge as to the existence of the original deed was not acquired in his capacity as executor, and since it certainly can not be said that this previous knowledge of any alleged previous deed had been acquired so recently "as would reasonably warrant the assumption that he still retained it," and since there is no fact or circumstance tending to show any actual present recollection on his part of the alleged sixteen-year-old previous deed at the time the loan deed was taken—this court is of the opinion that the evidence demanded a finding in favor of the defendant executor on that question. If the alleged unrecorded deed had no existence, the defendant lienholder would prevail; and since, even if it did exist, under the ruling just made the defendant lienholder would nevertheless prevail, the grant of a nonsuit, insofar as the rights of the defendant lienholder are concerned, will not be disturbed.

If on another trial the jury should find against the execution of the alleged original unrecorded deed, that would be an end to the case, and they would find against the plaintiffs, claiming the equity in the land. If however, the jury should find that the evidence established to their satisfaction the existence of the original deed from Mrs. McDonald to G. W. Latham, in which the grantee's interest was limited to a life estate with remainder over in fee to the plaintiffs in this suit, then the question as to the validity of W. T. Latham's title and of his wife under him would depend upon whether they had knowledge of the existence of such original unrecorded deed at the time W. T. Latham took his deed.

*Judgment affirmed in part, and reversed in part. All the Justices concur.*