## 66036. McNAIR v. GOLD KIST, INC.

McMURRAY, Presiding Judge.

In 1969 Fowler N. McNair opened an account with Gold Kist, Inc. with reference to the purchase of farming equipment and supplies. The account balance was paid in full several times prior to 1974. Beginning with the purchase on or about February 14, 1977, McNair began a period of sustained and continuous account activity although he had made a payment in full of his balance on July 18, 1974. In a time price differential contract dated December 26, 1976, he agreed to make payment for all purchases made and charges to the account within 10 days after receipt of the monthly statement on which the charge first appears and authorized a finance charge computed at a periodic rate of 1-1/2% per month to be imposed on the balance of any charges, after all payments and credits, remaining unpaid on the closing date of the first billing cycle following the billing date of charges, the same being an annual percentage rate of 18%. A similar agreement was executed by him on January 8, 1981.

The open account continued from sometime in 1969 to July 1, 1981, when he executed a note to Gold Kist, Inc. in the amount of $130,416.90, plus a finance charge of $7,825, or the total sum of $138,241.90, at an annual percentage rate of 18%.

Examination of the accounts of Fowler N. McNair with Gold Kist discloses that since the beginning of the accounting, numerous monthly charges for service charges have been added to the basic account. For instance, the entries from 8-11-80 until and including June 1981, at which time the indebtedness of the account was transferred to the note, shows only entries on the account for service charges. We also note that after the March 1980 service charge, the account balance was brought forward to April 17, 1980, as amounting to $31,849.33. By the time the note was executed the amount of the indebtedness was shown as $130,416.90.

McNair contends that at the time he signed the promissory note it included $39,161.07 in interest charges which had been previously charged to his account as monthly service charges and which involved charges of interest on interest. He further contends that the original

amount for which the note was made was less than $100,000.

No further payments were made by McNair, and Gold Kist proceeded to sue for the sum of $138,241.90, plus interest at the rate of 18% per annum from November 1, 1981, until judgment seeking also an additional 15% of said sum as reasonable attorney fees, the suit being filed on December 4, 1981.

The defendant answered denying the claim but admitting jurisdiction. Defendant contended "that said promissory note represents an indebtedness under an open account on which usurious interest has been charged, paid by defendant, and collected by plaintiff and an indebtedness on which a portion of the principal has been paid."

After discovery in which the above admitted facts were disclosed by all the parties and both parties having moved for summary judgment with supporting affidavits, stipulations and other evidence, the trial court ruled in favor of the plaintiff against the defendant for the amount sought plus attorney fees, interest and post-judgment interest at the rate of 18% per annum all as provided in the note. The trial court found as a matter of fact and conclusion of law that the original principal amount of the note sued on exceeded $100,000 which insulated it against the defense of usury as provided in OCGA § 7-4-7 (formerly Code Ann. § 57-119 (Ga. L. 1969, pp. 80, 81)). The court also found that the defendant having executed the two time differential agreements in December 1976, and January 1981, this specifically showed that he knew when he signed the note sued on that he had agreed for the past five years to pay interest on the entire account at the same rate of 18% per annum. Further, under the authority of *Ameagle Contractors v. Va. Supply & Well Co.,* 144 Ga. App. 477 (1) (241 SE2d 594), the execution of a note in payment of an account operates to cut off all defenses to the account of which the maker had knowledge, hence, defendant was barred from pleading usury with reference to the making of the note which was for more than $100,000, citing such cases as *Mercantile Nat. Bank v. Berger,* 129 Ga. App. 707 (200 SE2d 921); *Reid v. Nat. Bank of Ga.,* 149 Ga. App. 834 (256 SE2d 82). Defendant appeals. *Held:*

1. The case sub judice involves farm supplies supplied to a farmer in his business and is clearly one of a commercial account. We note that under OCGA § 7-4-16 (formerly Code § 57-111, as amended by Georgia Laws 1980, p. 514, effective March 20, 1980), the owner of a commercial account can charge interest on that portion of the commercial account which had been due and payable for 30 days or more at a rate not in excess of 1-1/2% per month calculated on the amount owed from the date upon which it became due and payable until paid and that a commercial account is classified or defined as an

obligation for the payment of money arising out of a transaction to sell or furnish, or the sale of, or furnishing of goods and services other than a retail installment, transaction defined in The Retail Installment and Home Solicitation Sales Act. Clearly for the entire time that this account was running it was a commercial transaction and was not covered as a retail installment transaction. However, only after March 20, 1980, could the interest of 1-1/2% be charged on the unpaid balance monthly.

2. Generally, the execution of a note in payment of an account operates to cut off all defenses to the account of which the maker then had knowledge. We say *generally* because the cases in support of this ruling are those of failure of consideration, mistake of fact, and open account and recoupment. See in this connection *Ameagle Contractors v. Va. Supply & Well Co.,* 144 Ga. App. 477 (1), supra, (failure of consideration and mistake of fact), and cases cited therein of *Coast Scopitone, Inc. v. Self,* 127 Ga. App. 124 (3) (192 SE2d 513) (failure of consideration); *Massey v. Elec. Wholesalers,* 137 Ga. App. 829 (2) (224 SE2d 811) (failure of consideration); *Nat. Duck Mills v. Catlin & Co.,* 10 Ga. App. 240 (3) (73 SE 418) (failure of consideration — breach of contract — accord and satisfaction). However, none of these cases involve usury, and the rule of law in this state is that once there is usury the usury infects any renewal note for the same debt or any part thereof unless the usury is purged. See *Hartsfield Co. v. Watkins,* 67 Ga. App. 411, 412-413 (1) (20 SE2d 440), and cases cited therein such as *Archer v. McCray,* 59 Ga. 546, 547 (2); *McGee v. Long,* 83 Ga. 156 (1), 160 (9 SE 1107); *Quinn v. First Nat. Bank of Fitzgerald,* 8 Ga. App. 235, 236 (3) (68 SE 1010). See also in this connection *Reconstruction Finance Corp. v. Puckett,* 181 Ga. 288 (181 SE 861); and *Kennedy v. Brand Banking Co.,* 152 Ga. App. 47, 49 (262 SE2d 177), in which the case of *Hartsfield Co. v. Watkins,* 67 Ga. App. 411, supra, was cited with approval with reference to usury. We therefore hold the trial court was in error here in concluding as a matter of law that the defendant, having knowledge of the rate of interest he was paying for nearly five years and then agreeing in writing to pay such rate, was precluded from raising any point about usury charged in this long running overdue open account. The cases cited do not support the trial court with reference to the charges of usury. See in this connection the recent case of *Gold Kist, Inc. v. McNair,* 166 Ga. App. 66 (303 SE2d 290) (involving a different defendant McNair) in which it was stated that "the trial court found that the plaintiff [Gold Kist] had charged usurious interest rates and ruled that all interest must consequently be forfeited pursuant to OCGA § 7-4-10 . . . Since the amount of interest which had been charged exceeded the amount allegedly due on the account, the trial

court entered summary judgment for the defendant in the amount of $7,061.75." In that case this court affirmed summary judgment for the defendant but directed that the judgment be reduced by the amount of the interest lawfully charged on purchases made after the effective date of the amendment to former Code § 57-111, supra, which was March 20, 1980.

3. Whether or not the trial court's determination as to the application of the law (OCGA § 7-4-7) (formerly Code Ann. § 57-119 (Ga. L. 1969, pp. 80, 81)) as applying to the case sub judice was correct cannot be decided here without a complete accounting to purge all usurious interest (to be applied to principal, if paid) and then a determination made as to whether or not the principal of the promissory note was for $100,000 or more.

The trial court erred in awarding summary judgment to the plaintiff. See *Ham v. Ham,* 230 Ga. 43, 45 (195 SE2d 429); *Hamlet v. Mr. Zippy, Inc.,* 163 Ga. App. 865 (294 SE2d 671). The record fails to disclose, without a proper reorganization and accounting of the open account so as to ascertain and purge all usury, the correct indebtedness at the time of the making of the promissory note. Therefore, genuine issues of material fact remain for determination. Under the facts and circumstances of the case sub judice and as genuine issues of material fact remain, the trial court did not err in denying defendant's motion for summary judgment.

*Judgment affirmed in part and reversed in part. Shulman, C. J., and Birdsong, J., concur.*

DECIDED JUNE 1, 1983.

*Frank C. Vann,* for appellant.
*Jay D. Bennett, G. Conley Ingram, Hewitt H. Covington,* for appellee.