A92A0854. SOUTHERN DEVELOPMENT COMPANY
v. SHEPCO PAVING, INC.
(426 SE2d 234)

Beasley, Judge.

The state court granted summary judgment to ShepCo Paving, Inc., both on its claim and on defendant Southern Development Company's counterclaim, and Southern appeals.

Appellee ShepCo, a paving contractor, filed suit against defendant Tom V. Woodall and appellant Southern seeking judgment against Southern on a promissory note and judgment against Woodall, Southern's president and one of two stockholders, on his personal guaranty thereof. Southern denied liability and pleaded the defenses of failure of consideration, mistake, and breach of the paving contract or overbilling by ShepCo. Southern also filed a counterclaim alleging the wrongful filing of a claim of lien by ShepCo.

1. In a summary judgment proceeding, hearsay evidence has no probative value unless part of the res gestae. *Southern Bus. Machines v. Norwest Fin. &c.*, 194 Ga. App. 253, 256 (2) (390 SE2d 402) (1990). A second principle applicable here is that " '[a]ppellate courts will review only evidence presented to the trial court before its ruling on the motion. Additional evidence will not be admitted on appeal.' [Cit.]" *Nowell v. Fain*, 174 Ga. App. 592, 593 (330 SE2d 741) (1985). Thirdly, factual assertions in briefs not supported by evidence of record are not generally considered on appellate review. *Behar v. Aero Med Intl.*, 185 Ga. App. 845, 847 (366 SE2d 223) (1988).

2. ShepCo was not a holder in due course within the meaning of OCGA § 11-3-302; however, appellant does not state where in the record the trial court made a finding that appellee was such a holder. We will not cull the record on behalf of a party in search of error. *Manderson & Assoc. v. Gore*, 193 Ga. App. 723, 733 (8) (389 SE2d 251) (1989); accord *Benefield v. Benefield*, 224 Ga. 208, 209 (5) (160 SE2d 895) (1968).

3. Southern asserts that the trial court erred in not finding inap-

plicable ShepCo's contention that the promissory note extinguished all defenses to the alleged indebtedness. *Ameagle Contractors v. Virginia Supply &c. Co.*, 144 Ga. App. 477 (1) (241 SE2d 594) (1978), held that "[t]he execution of a note in payment of an account operates to cut off all defenses to the account of which the maker then had knowledge." The court concluded that "[u]nder these circumstances [where the maker knew or should have known of the defenses], the trial court correctly determined that the defenses of failure of consideration and mistake of fact were not available." Id. Accord *Berry v. Atlas Metals*, 152 Ga. App. 437, 439 (2) (263 SE2d 179) (1979) (defenses cut off where appellant knew or should have known operative facts upon which note was based); compare *Jernigan Auto Parts v. Commercial State Bank*, 186 Ga. App. 267, 271 (3) (367 SE2d 250) (1988) (knowledge of all the facts upon which defense of fraud and duress based); *Munna v. Lewis*, 181 Ga. App. 860, 862 (354 SE2d 181) (1987); but compare *McNair v. Gold Kist*, 166 Ga. App. 782, 784 (2) (305 SE2d 478) (1983) (usury defense).

ShepCo asserts Southern is chargeable with the knowledge of its officer and agent Woodall, and that the alleged overcharges and the amount of material actually furnished on the job sites could have been ascertained by due diligence on the part of the company and its agents. The company contends it is not chargeable with the knowledge of Woodall, due to the alleged misrepresentations made by Woodall regarding the amounts due and owing ShepCo and his breach of the fiduciary relationship by failing to act in good faith to protect the interests of the company from the fraudulent claims of Woodall's friend and neighbor, Steve Copeland, the president of ShepCo.

" 'The law imputes to the principal, and charges him with, all notice or knowledge relating to the subject-matter of the agency which the agent acquires or obtains while acting as such agent and within the scope of his authority, or which he may previously have acquired, and which he then had in mind, or which he had acquired so recently as to reasonably warrant the assumption that he still retained it; provided, however, that such notice or knowledge will not be imputed: 1. Where it is such as it is the agent's duty not to disclose, and 2. Where the agent's relations to the subject-matter, or his previous conduct, render it uncertain that he will not disclose it, and 3. Where the person claiming the benefit of the notice or those whom he represents, colluded with the agent to cheat or defraud the principal.' " *Fowler v. Latham*, 201 Ga. 68, 74 (3) (38 SE2d 732) (1946), quoting *Bean v. Barron*, 176 Ga. 285 (2) (168 SE 259) (1933).

Applying the rules set forth heretofore to the record, we find there exists no competent evidence establishing, or from which it can reasonably be inferred, that Woodall was in collusion with ShepCo or

its president, Copeland, or that Woodall engaged in any conduct rendering it uncertain that he would act in good faith in reporting accurately the information in question to the company. Moreover, the experts' bare conclusions that "such significant overcharging could not be accomplished without the collusion or collaboration of [Woodall]" and "it is apparent to me that ShepCo's bills went unchallenged by [Woodall]" would not be admissible, as whether Woodall did or did not collude with ShepCo or challenge ShepCo's bills would not be a matter beyond the ken of the average juror. Compare *Palmer v. State*, 186 Ga. App. 892, 899 (4) (369 SE2d 38) (1988). Where an affidavit contains conclusions which would not be admissible in evidence, the conclusions are to be disregarded when ruling on a motion for summary judgment. *Love v. Love*, 259 Ga. 423, 424 (1) (383 SE2d 329) (1989).

Accordingly, there is operative in this case no exception to the general rule that Southern should be charged with the knowledge of agent Woodall. The record supports summary judgment, for it shows that the company knew or should have known, when it signed and delivered the note, the facts now asserted in its defenses.

Woodall was president, chief operating officer, both negotiator and supervisor of the paving contract, and one of the two stockholders of the company. Newton, Southern's counsel, was the other stockholder and also its secretary and arranger of finances for the project. Woodall signed the note for the company, and Newton attested it.

In particular, as the company says in its second supplemental brief, "Tom Woodall's responsibilities as [the company's] Chief Executive Officer were to undertake and complete the development of the property. Tom Woodall was the corporation's representative charged with the responsibilities of seeing that the engineering was complete and that all work for the development of the property was performed timely. This responsibility included reviewing all invoices to Southern Development Company, and ensuring that the invoices were correct and were only for work agreed to by Contract." That being so, what Woodall knew or should have known, and what he did or did not do, is thus attributable to the company. One cannot separate what he knew as a person from what the company knew, as the latter could only "know" through the mind of the former.

The company's expert witnesses, an engineer and a certified public accountant, testified that a review of all the documents connected with the contract related to the paving job show overcharges and consequently overpayments. But all of these records were in the custody and control of the president/ceo/job supervisor Woodall, so the company cannot say it did not know or could not have known the same thing, if in fact what the two experts say is accurate. To say that one could not ascertain the facts by viewing the worksite is beside the

point, for the testimony of the experts is not based on viewing the worksite. Of course, Woodall had this added advantage, as he supervised the performance of the contract. And even if there were charges without written change orders, Woodall knew it because he approved the charges, authorized payments, and obtained lien releases with each one as the work progressed. In other words, as in *Munna v. Lewis*, supra at 862, "the time to have undertaken such an examination of the [charges and] expenditures . . . was before signing the note." If there were mistakes of fact, their non-discovery was the result of Woodall's negligence, which is not a defense to the note. *Ameagle Contractors*, supra at 478 (1).

Moreover, the debt was originally about $17,000, as was confirmed by Woodall at the time. Half was paid by check and half by the note, which ShepCo accepted after Woodall finally added a personal guaranty, months after the debt was due and both Woodall and attorney Newton, the two operatives in the company, had opportunity to review the records and challenge the debt. The company does not contend that the amount paid by check was in error. The evidence conclusively establishes that the note was given on the antecedent debt, and no further consideration was necessary. *Berry*, supra at 439 (2). OCGA § 11-3-408. ShepCo was entitled to summary judgment on the note which Southern gave to it.

4. This is true also of Southern's counterclaim for damages sought in connection with ShepCo's lien, which Southern alleged was invalid. The delivery of the note with the guaranty, months after the lien was placed due to nonpayment of the debt when it was overdue, so as to gain an extension of time for payment of the debt and to have the lien released, estopped Southern from challenging the lien. See *Crockett v. Shafer*, 166 Ga. App. 453, 454 (3) (304 SE2d 405) (1983).

Moreover, it is undisputed that the earlier lien waivers related to the progress payments then made, not the unpaid July 1988 invoice, so that the waiver did not render the November lien invalid. It is also undisputed that the lien included work done within the time allowed for the lien to be timely. It states that the claim, which brought the debt amount up to date, became due September 28. The lien was filed November 7. See OCGA § 44-14-361.1 (a) (2). The release of the lien having been part of the consideration for the guaranteed note, which note Southern is estopped from asserting pre-note defenses against, precludes Southern from challenging the lien concerning which it had full knowledge at the time it delivered the guaranteed note. See *Jernigan Auto Parts*, supra at 271, 273.

There is no basis in the record which would estop the lienor ShepCo from "invalidat[ing] the lien waivers." It is not seeking to do so; the lien waivers simply did not apply to the unpaid debt which underlay the note, the subject of this suit. "Labor, materials or ser-

vices . . . in the future" plainly related to the work described in the invoice, such as "8561 sq. yds. 5" stone Inv. #1231." Furthermore, it would be invalid if it related to *future* work, i.e., the work which was invoiced and paid by the note. The waiver "would only be effective to waive lien rights up to the amount billed at the time the waiver was executed, . . ." *Schwan's Sales Enterprises v. Martin Mechanical Contractors*, 202 Ga. App. 510, 511 (2) (414 SE2d 727) (1992).

Finally, there is no question that the company knew the facts which it now says rendered the lien invalid, which alleged invalidity is the basis for its counterclaim. The lien claim itself states when the amount claimed became due, and Woodall if not Newton knew what work was being done on the project, what the contract required, and what had been invoiced and paid. It also had the prior waivers which Woodall obtained from ShepCo each time a progress payment was made. Plus, it took affirmative action to have the lien released, not by challenging it in court but by securing ShepCo's promise to release it if the company delivered a guaranteed note in March to cover the unpaid previous June's invoice. ShepCo fulfilled that promise. It is too late to assert that the lien was invalid and caused recoverable damages to Southern.

*Judgment affirmed. Birdsong, P. J., and Andrews, J., concur.*

DECIDED DECEMBER 1, 1992.

*Troutman, Sanders, Lockerman & Ashmore, Richard A. Newton, Zachary & Segraves, William E. Zachary, Jr.*, for appellant.

*Nardone & Read, Charles D. Read, Jr., Rawlins & Mobley, David D. Rawlins*, for appellee.