68170. WILLIAMS et al. v. SESSIONS et al.

McMURRAY, Chief Judge.

This case involves a suit on a note. On September 30, 1981, an installment note was executed by the defendants and given to the plaintiffs as security for a loan in connection with a real estate transaction. The principal and interest of the note were secured by a bill of sale security agreement to certain described personal property and by a deed to secure debt to certain described real property. The note provided in pertinent part: "[T]he undersigned [defendants] promises to pay to the order of — [plaintiffs] — Seventy five thousand and no/100 — Dollars . . . with interest from date at the rate of 10 per cent per annum, with all cost of collection, including fifteen (15) per cent attorney's fees. VALUE RECEIVED.

"The interest on this note from October 1, 1981 through December 31, 1981 shall be due and payable January 1, 1982 and thereafter the balance and interest shall be payable in 240 consecutive monthly installments, each in the amount of $723.75, beginning on 1st day of February 1982, and thereafter another installment is due on the first day of each month to and including the first day of January 2002, when the last installment is due and payable." The note further provided: "Should any of the covenants and agreements of this note or of a security deed executed herewith not be complied with, the holders of this note shall have the right to declare the principal sum to be due in advance of the date named herein, time being the essence of this contract."

Subsequent to the execution of this note, the plaintiffs, for several reasons, claimed that defendants had defaulted on the note and allegedly in accordance with the terms of the note, accelerated the balance of principal and interest due and payable. The note only ac-

celerated the balance of the principal sum due and payable. The plaintiffs also accelerated the balance of the interest which they claimed to be due and payable in addition to the principal sum. Defendants refused to pay the accelerated amount (either the principal sum or the interest), and plaintiffs brought suit on the note for the balance of the principal and interest due; the cost of collection, including fifteen (15) percent attorney fees; the unpaid interest from October 1, 1981, through December 31, 1981; and the costs of bringing the action. Defendants answered, denying that any default had in fact occurred and further asserted that the note should have been reformed to reflect the true intention of the parties (i.e., the clause providing for interest from October 1, 1981, through December 31, 1981, should have been stricken). The defendants also counterclaimed for damages, alleging misrepresentation and fraud on the part of the plaintiffs.

The trial court, sitting as the trier of fact, found that no default had in fact occurred and accordingly, held that plaintiffs could not accelerate the note. On the issue of whether the note should have been reformed, the court answered in the negative and ruled that the interest from October 1, 1981, through December 31, 1981, in the amount of $1,875, was due and payable. Finally, as to defendants' counterclaim, the court found that the plaintiffs had misrepresented a material fact which had been justifiably relied on by the defendants to their detriment. As such, the trial court awarded the defendants damages in the amount of $4,500. It is from these findings of fact and conclusions of law that plaintiffs appeal. *Held*:

1. The trial court did not err in holding that no default had occurred due to defendants' failure to pay interest on the note from October 1, 1981, through December 31, 1981, on the date specified in the note (i.e., January 1, 1982). We are of the opinion that plaintiffs waived their right to insist upon the time limit named in the note, by reason of their failure to insist upon it at the time and because of their subsequent conduct. As the record reflects, the plaintiffs never complained about the interest not being paid until they met with their attorney, seven months after the payment became due and payable. To this end, the record shows that plaintiffs, through their attorney, sent defendants a letter requesting that the accelerated amount of the note be paid. However, this assertion of the acceleration clause was insufficient to turn defendants' failure to pay into a default because of the requirement in OCGA § 13-4-4 (formerly Code § 20-116) that "[w]here parties, in the course of the execution of a contract, depart from its terms and pay or receive money under such departure, *before either can recover . . . reasonable notice must be given to the other of intention to rely on the exact terms of the agreement*." (Emphasis supplied.) And "[r]easonable notice [of inten-

tion to rely on the exact terms of the agreement after having departed therefrom] *requires more than the assertion of an acceleration clause, for the other party must be given a reasonable opportunity to cure any deviations from the exact terms before [an action on the note] can be commenced due to defaults which were tolerated under the quasi new agreement.*" (Emphasis supplied.) *Curl v. Fed. Savings &c. Assn.*, 241 Ga. 29, 30 (244 SE2d 812).

2. In their complaint, plaintiffs contend that defendants failed to make their monthly installments on the first of each month as required by the note; that as a result of defendants' untimely payment practice, plaintiffs sent defendants a letter in July 1982 advising them that in the future strict compliance with the payment terms (and other provisions) of the note would be required; that defendants received this letter and continued to make untimely payments; and that defendants continued violation of the terms of the note after having received the July 1982 letter requiring strict compliance constituted default. However, on the trial of the case, the trial court, sitting without a jury, found that defendants had, in fact, mailed their July 1982 payment, but that it was apparently lost in the mail; that plaintiffs had established a practice of accepting late payments in the past; and that defendants never received plaintiffs' July 1982 letter requiring strict compliance. Based upon these findings, the trial court held that defendants were not in default on their note. We agree. "When a non-jury judgment by a trial court is reviewed by an appellate court in Georgia, we will not interfere with the findings of fact by the trial tribunal if there is 'any evidence' to support it. [Cit.]" *Wolfe v. Rhodes*, 166 Ga. App. 845, 847 (305 SE2d 606). Here, our review of the record reveals that there was sufficient evidence to authorize the trial court's findings. Hence, the trial court, sitting as trier of fact, was authorized to hold that no default had occurred based upon its findings that plaintiffs had established a practice of accepting late payments in the past and then declared a default without granting "reasonable notice" of its intention to rely on the strict terms of the note. See OCGA § 13-4-4, supra; *Curl v. Fed. Savings &c. Assn.*, 241 Ga. 29, supra.

3. The deed to secure debt executed in connection with the installment note provides in pertinent part: "The Grantor [defendants] does agree to procure, maintain and deliver unto the Grantee [plaintiffs] policies of fire and extended coverage insurance and such other forms of insurance as may be required by the Grantee, in company or companies selected by the Grantee, insuring the improvements upon the property against the loss or damage in a total amount of not less than $75,000.00, with Standard New York Mortgagee Clause attached thereto in favor of the Grantee, as the interest of the Grantee may appear, and place the policy and Standard New York Mortgagee

Clause with the Grantee." As a result of this clause it is plaintiffs' contention that defendants' failure to maintain insurance with a loss payable clause in favor of the plaintiffs constituted a default. However, for the reasons specified by the trial court, we are of the opinion that plaintiffs waived their right to declare such a default. First, the evidence reflects that soon after the transfer of insurance into defendants' names, Mr. Williams, one of the plaintiffs, was aware that he had not been named as loss payee. Second, it is undisputed that when the mobile home in question burned, it was replaced with another mobile home from the proceeds of defendants' insurance policy. Particularly important to the trial court was the fact that plaintiff Mr. Williams himself testified that it did not seem right for him to get the proceeds from defendants' insurance policy. In fact, plaintiff Mr. Williams testified that he spoke with defendants about the loss and tried to sell them a replacement home. Moreover, the plaintiffs never once mentioned anything to defendants about being in default due to their failure to name plaintiffs as loss payees until approximately one year after the loss in question had occurred. Incidentally, defendants, shortly after receiving plaintiffs' letter (dated August 24, 1983) informing defendants of their intention to rely on the provisions in the deed to secure debt and the bill of sale security agreement requiring defendants to maintain insurance with a loss payable clause in favor of plaintiffs, struck the loss payees then named on their policies of insurance and named in their place, the plaintiffs.

4. In their counterclaim for damages, defendants alleged: (1) that prior to the execution of the contract to purchase, plaintiff Mr. Williams made certain representations to defendants concerning the condition of the property about to be purchased; (2) that defendants relied upon these representations; (3) that the representations were made for the purpose of inducing the defendants to act (i.e., to enter into the agreement to purchase); (4) that subsequent to the purchase, defendants discovered various defects in the property (especially in connection with the sewer and gas lines) not discoverable at the time of purchase and contrary to the representations previously made by the plaintiff Mr. Williams; (5) that the representations were wilfully and knowingly false and misled the defendants in establishing the value of the property and in agreeing to the purchase price; and (6) that because of these misrepresentations, defendants were damaged.

Relying heavily upon *Wilhite v. Mays*, 140 Ga. App. 816 (232 SE2d 141), affd. as modified, 239 Ga. 31 (235 SE2d 532), the trial court found that defendants made out at trial a proper case of fraud resulting from positive misrepresentation. However, in the case sub judice, unlike *Wilhite*, supra, and contrary to defendants' contentions, there was no evidence in the record to show that plaintiff Mr. Williams knew of the alleged defects (in the sewer and gas lines) prior

to defendants' purchase of the property. As such, the trial court erred in awarding defendants damages based upon fraud since " '[i]n all cases of deceit, knowledge of the falsehood constitutes an essential element.' [Cit.]" *Lively v. Garnick*, 160 Ga. App. 591, 592 (1) (287 SE2d 553).

The trial court, in its findings of fact and conclusions of law, also made mention of an express warranty resulting from plaintiff Mr. Williams' statement that the property was in "working order." However, as far as the record discloses, this promise was not reduced to writing — in the sales contract, the deed to secure debt, or elsewhere. Therefore, under the holding and reasoning in *P.B.R. Enterprises v. Perren*, 243 Ga. 280, 281 (2)-282 (253 SE2d 765), the oral promise was unenforceable.

5. Plaintiffs' last two enumerations of error are supported by neither argument nor citation of authority. Therefore, they are deemed abandoned under Rule 15 (c) (2) of the Rules of the Court of Appeals of Georgia, adopted February 23, 1981, effective September 1, 1981. See *Ale-8-One of America v. Graphicolor Services*, 166 Ga. App. 506, 508 (8) (305 SE2d 14).

*Judgment affirmed in part, reversed in part. Deen, P. J., and Sognier, J., concur.*

DECIDED JUNE 21, 1984 —
REHEARING DENIED JULY 16, 1984.

*W. Barry Williams*, for appellants.
*Ben Swain McElmurray, Jr.*, for appellees.