## 75275. TURNER OUTDOOR ADVERTISING, LTD. v. FIDELITY EASTERN FINANCIAL, INC.

### (366 SE2d 201)

BEASLEY, Judge.

Plaintiff Turner Outdoor Advertising, Ltd. appeals from a directed verdict against it at the close of its evidence in a breach of contract suit to collect from defendant Fidelity Eastern Financial, Inc. d/b/a Diana's Bakery, unpaid monthly rent for a painted outdoor advertising display.

Plaintiff's evidence showed that on July 3, 1985 Turner entered into an agreement with Diana's, a tanning salon, for a painted outdoor advertising display. The contract term was for twelve months, beginning August 24, 1985 at a monthly rental of $400. Diana's made an initial deposit of $400.

A specific location for the billboard was discussed, was acceptable to Diana Goodman, the president of the business, and was specified on the face of the contract. After the contract was executed, Loeffler, the account executive with Turner, had further discussions with Goodman about the content of the billboard and the artwork was begun. Loeffler learned that the ground lease on the property on which Diana's billboard was to be located was terminated. Even though Turner had received notice of intent to terminate the ground lease in April, before the contract with Diana's, no one in the sales department including Loeffler knew that the lease had been terminated. Turner had not taken the location off the list of available sites used by its sales staff.

Loeffler secured an alternate location for the billboard closer to the salon, and it was approved by Goodman. Subsequently the ground lease on this substituted location was also cancelled and a second substituted location of equal or greater value was found which Goodman also approved. The listed rental price for the new location was $450 per month, but Loeffler secured Turner's consent to let Diana's pay the contract price of $400 per month. The billboard was erected at this location by the contract deadline.

In early September, the billboard was inadvertently covered up with another advertisement. Turner corrected the situation within twenty-four hours of learning of it. On September 23, the salon's counsel wrote Turner, stating that since Turner had "breached" the contract by "taking [Diana's] billboard down" after it had been up only several days, Diana's no longer wished to continue its relationship with Turner and requested refund of the $400 paid. Goodman also indicated to Loeffler that she no longer wished to deal with Turner. Turner maintained the salon's billboard for the full term of the contract even though the salon never made any of the remaining nine rental payments. Turner had given the salon one month's rental

credit for the substitution of locations and a second month's credit for the billboard cover-up, based on a contract provision that: "If . . . for any other reason whatever, Turner shall be unable to paint and maintain any of the space[s] covered hereby, this agreement shall not terminate either in whole or as to any part, but Turner shall allow us credit at the rate for such space shown on the face hereof for the period during which service shall not be furnished or shall be discontinued or suspended."

Turner sued to recover the nine months rental with interest plus attorney fees. Diana's counterclaimed for refund of the $400 deposit plus interest, reasonable attorney fees, and costs.

At the close of Turner's evidence, Diana's moved for a directed verdict on the bases of Turner's "foul-up of the various signs" amounting to breach of the contract and the contract's rescission by Goodman's indications that the business relationship was ended and counsel's letter to that effect. The court granted the motion after determining, in essence, that the contract was void because defendant had been fraudulently induced to enter it when, at the time of execution, Turner knew that the specific location listed in the contract, which was fundamental to it, would not be available. The court refused relief on the counterclaim and Diana's acquiesced in the ruling.

Turner argues that a directed verdict should not have been granted because the court erroneously concluded as a matter of law that: the contract was void as a result of inceptive fraud; there was no valid contract modified as to location by agreement of the parties; Turner had not complied with the terms of a valid contract by providing an alternate acceptable to Diana's and giving rent credit so as to preclude rescission by Diana's.

Did the evidence show fraud in the inducement as a matter of law?

"Fraud which constitutes a ground for voiding a contract under OCGA § 13-5-5 must be fraud which induced a party to enter into the contract. [Cit.] The elements of fraud are '(1) a false representation made by [a party]; (2) scienter; (3) an intention to induce [the] [other party] to act or [to] refrain from acting in reliance thereon; (4) justifiable reliance by the [other party]; (5) damage to the [other party]. [Cit.] Fraud may not be presumed, but, being in itself subtle, slight circumstances may be sufficient to [sustain a finding] of its existence. [Cit.] It is peculiarly the province of the jury to pass on these circumstances. [Cits.]' [Cits.]" *Allen v. Sanders*, 176 Ga. App. 647, 648 (1) (337 SE2d 428) (1985).

The circumstances of the initial location and its relationship if any to execution of the contract, as gleaned solely from plaintiff's evidence, did not conclusively demonstrate fraud in the inducement of the contract as a matter of law. There was evidence that an incorrect

representation was made regarding the initial site's availability. However, there was also evidence that the representation was innocently made by the sales agent. Even if the advertising company's knowledge is imputed to the agent, this does not establish that the misrepresentation was made with the intent to induce defendant to enter the contract, or that the first location was fundamental and defendant acted in reliance on its being provided. In addition, the evidence did not establish any damage suffered by defendant as a result of the alleged misrepresentation. To the contrary, it showed that the defendant business had approximately a year's worth of billboard advertising after having made only the initial payment, at a location which was satisfactory to it and could command a greater rental than the original site. There was evidence that Turner, by issuing the salon two months rental credit, had complied with the remedial terms of the contract.

Assuming that plaintiff's evidence had made out a defense of fraud in the inducement in favor of the defendant as a matter of law so as to render the contract voidable, that would not end the case. Fraud does not automatically void a contract but rather renders it voidable at the election of the injured party. OCGA § 13-5-5. "Such a contract may be ratified by the party defrauded, and when so ratified it becomes valid and binding upon all. [Cits.] To rescind such a contract one must be diligent in discovering the fraud, [Cit.], and upon discovery of the fraud he must act at once and announce his purpose to rescind and adhere thereto. [Cit.]" *Manning v. Wills*, 193 Ga. 82, 90 (3) (17 SE2d 261) (1941); see also *Yawn v. Powell*, 146 Ga. App. 554 (246 SE2d 737) (1978). Plaintiff's evidence raised questions of ratification of the contract by defendant, as modified, and of defendant's diligence in its attempt to rescind the contract. These questions were properly resolved by the jury. See *Thomson v. Walter*, 160 Ga. App. 542 (287 SE2d 562) (1981).

Diana's asserts that the availability of the initial location was a condition precedent in the contract which was not performed and that it therefore had no obligations under the contract. Even if obtaining the initial site was properly characterized as a condition precedent in the contract, which we do not decide, the performance of a condition precedent may be waived. Again the evidence made this a question for jury resolution. *Heitmann v. Commercial Bank*, 6 Ga. App. 584 (65 SE 590) (1909).

"A directed verdict is proper only where there is no conflict in the evidence as to any material issue and the evidence introduced together with all reasonable deductions and inferences therefrom demands a particular verdict. OCGA § 9-11-50 (a); *Tri-Eastern Petro. Corp. v. Glenn's Super Gas*, 178 Ga. App. 144, 145 (1) (342 SE2d 346) (1986)." *Beard v. Fender*, 179 Ga. App. 465 (346 SE2d 901) (1986). That not being the case here, the court's premature conclusion of the

case in defendant's favor was error.

*Judgment reversed. McMurray, P. J., and Sognier, J., concur.*

DECIDED FEBRUARY 12, 1988.

*Lawrence S. Burnat, Lynn C. Stewart,* for appellant.
*Charles J. Vrono,* for appellee.