75708. JERNIGAN AUTO PARTS, INC. et al. v. COMMERCIAL STATE BANK.
75709. CUMMINGS et al. v. COMMERCIAL STATE BANK.
(367 SE2d 250)

BEASLEY, Judge.

These companion appeals are from the grants of summary judgment to Commercial State Bank in its suits for the collection of unpaid balances of four promissory notes and enforcement of a personal guaranty.

*Case No. 75708*

In September 1981, Steve Jernigan, individually and d/b/a Jernigan Auto Parts, Inc., purchased an auto parts business. The terms of

the purchase were payment of $80,000 to Commercial State Bank for the credit of the sellers, a note for $10,000 to the guarantor for the debt of the sellers to the bank, and payment of all other debts of the seller relating to the business except the sellers' debt to the bank.

About a year after the purchase, Jernigan applied to the bank for an $180,000 loan, offering collateral and personal endorsements by himself and his wife on the note from the corporation, Jernigan Auto Parts, Inc., plus a personal guaranty on the note by Jernigan's father-in-law, John J. Cummings, Jr. The loan was made and the borrowers disbursed the proceeds.

The terms of repayment of the $180,000 note were 180 monthly payments of $2,600 each, principal and interest. Beginning in January, 1985 until October, 1985 the note was periodically delinquent. On July 30, 1986, Cummings made a payment of $14,646.38 reducing the balance on the note to $140,946.91. On August 1, 1986, the bank took another note for a loan of $9,513.22.

The Jernigans sold the auto parts business and then in September made payments to reduce the indebtedness on the $180,000 note to $93,660.55 and on the $9,513.22 note to $9,357.09. The borrowers defaulted on the notes and the bank filed suit against the principal auto parts business, the Jernigans individually as the endorsers and Cummings as the guarantor on the first note to collect the unpaid balances plus interest and attorney fees.

The defendants responded to the suit and lodged a counterclaim asserting that the notes and the guaranty were obtained by the bank's fraud and misrepresentation. They alleged that the bank, through its corporate officer Penn, convinced the Jernigans to sell their gas station and purchase the auto parts business which the bank had foreclosed upon, that Penn represented that the business was a good one, that the Jernigans should buy it, that any financing needed could be arranged, and that Penn convinced them to pay all the debts owed to the bank by the prior owners including one to a "favored depositor" of the bank. They further alleged that Penn had control of the books, bank statements, and daily deposits of the business, knew the financial condition of the business and deliberately withheld that information from them. They also claimed that Penn promised Cummings that the bank needed his guarantee only to get the loan approved, that the guaranty would be cancelled after two years, that Cummings' guaranty was needed in order to release Penn from liability on prior notes connected with the business, and that the bank deliberately concealed the full scope of its actions and conduct from them until Steve Jernigan obtained knowledge of the "fraud and scheme" by looking through the bank's file.

The bank moved for summary judgment submitting, inter alia, the affidavit of its president, Hanna, which in lengthy detail outlined

the execution and terms of the notes and the guaranty and the Jernigans' business transactions relative to the notes. The affidavit acknowledged defendants' allegations of fraud and misrepresentation and stated that the tax return for the first year's operation of the auto parts business showed it to be a "going concern with assets of $176,974.00 as of September 25, 1981, the approximate date of acquisition by the Jernigans, $163,864.28 as of December 31, 1981 after Jernigan had had the business for a little more than three months, and the income and expenses for the first eight months show a gross profit of $60,000.00"; that though defendants contended that Penn convinced them to sell their gasoline station and purchase the auto parts business, the Jernigans continued to operate the service station for approximately two months after they bought the auto parts business; that there was no promise to Cummings that his guaranty would be cancelled after two years; that there was no such two-year limitation in the guaranty, which was clear and unambiguous; and that there was nothing in the bank's records to indicate an oral variation from the written contract.

The affidavit further stated that the August 1, 1986 note was made for the purpose of renewing and paying a part of the principal of two previous notes of Jernigan Auto Parts, Inc., that this second note was made and signed more than two years after Penn's connection with the bank and almost ten months after Jernigan's alleged discovery of the fraud, and that the Jernigans made one payment of $300 on the note on September 16, 1986.

The bank also submitted Penn's affidavit. It stated that he had no connection with the bank since May 10, 1984; that he recalled Jernigan's application to the bank for the $180,000 loan, the collateral that was offered; that Jernigan said that his father-in-law, Cummings, would guaranty the loan or endorse the note; that Cummings himself came to talk to Penn about the loan, said he would guarantee payment, and signed a guaranty agreement; and that at no time did he tell Cummings that his guaranty would be for only two years. It further stated that the loan was approved by the bank's loan committee; that the loan papers were freely and voluntarily signed by the Jernigans and Cummings without any persuasion on the part of anyone; that he concealed no facts from the Jernigans; that the Jernigans were in control of the books of the corporation; that Mrs. Jernigan wrote and signed all checks for the corporation; that at the time of his resignation from the bank, payments on the note were current; that Jernigan's sale of the service station was an act of his own, two months or more after going into the auto parts business; that insofar as he knew, the sale had nothing to do with Jernigan's entry into another business; that when the Jernigans sought the $180,000 loan in September 1982, they had operated the auto parts business for about

a year, either knew or were presumed to know what they were doing, and that there was "no concealment of any facts by anyone. They had them."

In opposition to the motion was Steve Jernigan's affidavit which tracked the allegations of Penn's misrepresentation and fraud contained in the answer and counterclaim.

The trial court granted summary judgment to the bank against all defendants for the unpaid principal on the notes, past and future interest, attorney fees, and costs.

Defendants contend that there remain questions of fact, citing general principles of summary judgment law. They do not show just what material facts remain in dispute. They simply state that Hanna's affidavit is a mere recital of the complaint, answer and counterclaim along with Hanna's opinions as to their significance in this case and argue that opinion evidence alone is not sufficient to authorize the grant of summary judgment. They further argue that Penn's affidavit directly addresses and opposes the facts set out in the pleadings and affidavit of Steve Jernigan and therefore goes only to the weight of the evidence.

It is undisputed that the note and guaranty were executed, that the funds were received, and that there were unpaid balances on the note, the amounts of which are also not in dispute. Unless the evidence on summary judgment raised a genuine issue of material fact as to fraud on the part of Penn in regard to execution of the notes and the guaranty such as would render the notes voidable, the bank was entitled to judgment as a matter of law.

1. Although bank president Hanna's affidavit included many of the allegations in the pleadings, it also included Hanna's statement that he was familiar with the bank records relative to the notes and that he was personally acquainted with the borrowers. It thus was not deficient for the reasons urged. See *Murphy v. First Nat. Bank*, 182 Ga. App. 788, 789 (6) (357 SE2d 266) (1987); see also *Georgia Grain &c. Co. v. First Ga. Bank*, 142 Ga. App. 709, 710 (3) (236 SE2d 913) (1977).

2. The challenge to the Penn affidavit is likewise without merit. While it directly opposes much of Jernigan's affidavit, that is to be expected in moving for summary judgment. OCGA § 9-11-56 (e). It does not serve only to affect the weight of the evidence, but must be assessed along with the other evidence to determine if defendants' defenses are pierced. *Soni v. Coppedge*, 159 Ga. App. 889, 890 (1) (285 SE2d 604) (1981).

3. The gravamen of the defendants' position is that they should be relieved from paying the balance on the notes because of fraud on the part of the bank which induced them to purchase the auto parts business and hence to execute the notes. They claim that they discov-

ered this fraud in October 1985. Yet they continued to make payments on both notes, as late as September 1986.

Fraud does not automatically void a contract; it only renders it voidable at the election of the injured party. OCGA § 13-5-5. "It is a well settled rule that if a party who is entitled to rescind a contract because of fraud or false representation, when he has full knowledge of all the material circumstances of the case freely and advisedly does anything which amounts to the recognition of the transaction, or acts in a manner inconsistent with its repudiation, it amounts to acquiescence, and, though originally impeachable, the contract becomes unimpeachable even in equity. It is incumbent upon a party who attempts to rescind a contract for fraud to repudiate it promptly on discovery of the fraud. [Cits.] . . . [If he does not], [h]e will be held to have waived any objection, and to be conclusively bound by the contract as if no fraud or mistake had occurred. [Cit.]" *Woodall v. Beauchamp*, 142 Ga. App. 543, 545 (1) (236 SE2d 529) (1977).

In the specific instance of a debtor and a creditor, "[w]here a debtor voluntarily pays a part of an amount claimed to be due by his creditor on a contract which the debtor seeks to attack on the ground of duress and fraud in an action against him by the creditor for an overdue installment thereunder he is conclusively deemed to have waived the duress and fraud if at the time of the partial payment he has knowledge of all the facts upon which he now bases his claim of fraud and duress as a ground for avoiding the validity and enforcement of the contract and at a time when the alleged duress was at an end. [Cits.]" *Hart v. Trust Co. of Columbus*, 154 Ga. App. 329, 330 (268 SE2d 384) (1980). See also *Turner Advertising Co. v. Prakas*, 164 Ga. App. 788, 789 (2) (298 SE2d 553) (1982); *Milde v. Harrison*, 162 Ga. App. 809, 810 (293 SE2d 56) (1982).

Even accepting defendants' evidence as undisputed that the notes were entered into because of the bank officer's fraud, the bank was still entitled to judgment because defendants waived the fraud and ratified the notes by their silence after they learned of the officer's objected-to actions and by their subsequent payments on the notes.

4. As to the alleged time limitation on the Cummings' guaranty, it was complete as written and any oral agreement between the bank officer and Cummings made prior to or contemporaneously with the guaranty would have been incompetent to change the contract as represented on its face. *Whiteside v. Douglas County Bank*, 145 Ga. App. 775, 776 (2) (245 SE2d 2) (1978). Secondly, a bank officer is precluded from making promises which will relieve the maker of a note payable to the bank from responsibility. What is more, the alleged promise by the officer to limit the duration of the guaranty would not be a basis for a claim of fraud in its procurement because " 'fraud

cannot be predicated upon statements which are promissory in their nature as to future acts. [Cit.]' [Cits.]" *First Nat. Bank &c. Co. in Macon v. Thompson*, 240 Ga. 494, 495 (241 SE2d 253) (1978). Finally, any fraud was waived or ratified by Cummings' payment on the note following discovery of the bank records. See *Hart*, supra; *Turner Advertising Co.*, supra; *Milde*, supra; *Turner Outdoor Advertising v. Fidelity Eastern Fin.*, 185 Ga. App. 815 (366 SE2d 201) (1988).

5. The bank has moved for the imposition of damages pursuant to OCGA § 5-6-6 for a frivolous appeal. "In light of the fact that [appellants'] liability was clear and the fact that the amount of [their] liability was readily ascertainable, considered in conjunction with the meritlessness of the issues raised in this appeal, '[i]t does not appear that there was any valid reason for the [appellants] to anticipate reversal of the [trial] court's judgment, and, consequently, we must conclude that the appeal to this court was for the purpose of delay only. Accordingly, the [appellee's] request for award of damages in the amount of 10 percent of [the] judgment is granted.' [Cit.]" *Karsman v. Portman*, 173 Ga. App. 108, 110 (4) (325 SE2d 608) (1984). The cursory nature of appellants' brief supports this conclusion. "The trial court is therefore directed to enter judgment in favor of the appellee for additional damages in the amount of 10 percent of the judgment, . . ." *I.M.C. Motor Express v. Cochran*, 180 Ga. App. 232, 233 (2) (348 SE2d 750) (1986).

### Case No. 75709

This appeal involves the bank's suit against Mr. and Mrs. Cummings to collect the balance due on two promissory notes which were renewals of prior notes, the final renewal notes made on September 22, 1986 and on June 10, 1986. The Cummingses defended the action and counterclaimed with the same claims of fraud on the part of the bank as made by the Jernigans and Mr. Cummings in Case No. 75708.

The bank moved for summary judgment with the supporting affidavit of Hanna which stated that he was personally acquainted with the Cummingses and was familiar with the bank records regarding the two notes, and which in great detail outlined the transactions and the defendants' defense of fraud. The Cummingses countered with an affidavit by their son-in-law Jernigan which was verbatim Jernigan's affidavit submitted in the other suit. A second counter-affidavit by John Cummings was submitted which also tracked the son-in-law's affidavit save for the additional averment that on September 20, 1985 the then president of the bank, with knowledge of the alleged concealment by Penn, asked Cummings to put $25,000 into the "failing" auto parts business and that he agreed to do so after being assured it would save the business.

Here again appellants merely make the general assertion that genuine issues of fact remain and challenge the Hanna affidavit. The Hanna affidavit is not deficient for the reasons cited. See Division 1, supra.

Save for the arguments regarding Cummings' guaranty on the Jernigan note, which guaranty has not been shown to be relevant to the two notes at issue, the reasoning and principles which mandated judgment in favor of the bank in its suit on the Jernigan notes and the Cummings' guaranty are likewise applicable in this suit.

Assuming the alleged fraud and misrepresentation by Penn induced the Cummingses to enter into the renewal notes, this was discovered in October 1985 and both notes were made in 1986. All of the alleged acts of fraud were known to the defendants prior to execution of the notes. Thus the execution of the notes cut off all defenses to payment of them. *Lemco Gypsum v. Omni-Lift*, 176 Ga. App. 534, 536 (336 SE2d 334) (1985).

Inasmuch as the bank showed that the makers failed to pay balances due on the notes, that the amounts are not in dispute, and that defendants failed to raise an issue of material fact as to a meritorious defense, the bank was properly awarded summary judgment on these notes as well.

*Judgment affirmed with direction in Case No. 75708. Judgment affirmed in Case No. 75709. McMurray, P. J., and Sognier, J., concur.*

DECIDED MARCH 8, 1988.

*Ronnie Joe Lane*, for appellants.
*Julian Webb*, for appellee.