**FIFTH DIVISION**
**MERCIER, C. J.,**
**MCFADDEN, P. J., and RICKMAN, P. J.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**February 27, 2025**

# In the Court of Appeals of Georgia

A24A1422. MCKAY v. INALFA ROOF SYSTEMS, INC. et al.

MCFADDEN, Presiding Judge.

In *Ga. Elec. Co. v. Rycroft*, 259 Ga. 155, 158 (378 SE2d 111) (1989), our Supreme Court "adopted a three-part test for determining when fraud in the inducement is sufficient to bar an employee's claims for [workers' compensation] benefits." *Dynasty Sample Co. v. Beltran*, 224 Ga. App. 90, 91 (479 SE2d 773) (1996). The *Rycroft* Court held that the defense applies where the employee knowingly and wilfully made a false representation about her physical condition; the employer relied upon that false representation and its reliance was a substantial factor in hiring the employee; and a causal connection existed between the false representation and the injury for which the employee seeks workers' compensation benefits. *Rycroft*, 259 Ga. at 158.

This appeal concerns an issue of first impression: whether the *Rycroft* defense applies where the employer learns about the false representation after hiring the employee but *before* the injury in question, and despite that knowledge, retains the employee. We hold that the defense does not apply in those circumstances. So as to employee Sharron[1] McKay's claim for benefits from an injury occurring on September 14, 2021, we reverse the superior court's judgment which affirmed the decision of the State Board of Workers' Compensation in favor of her employer, Inalfa Roof Systems, Inc.[2]

1. *Facts*

In its ruling, the State Board of Workers' Compensation adopted the detailed factual findings of an administrative law judge. We review those factual findings under a very deferential standard. As we have explained, this court has no

---

[1] McKay used this spelling of her first name when she initiated her claims, but her name is spelled differently at other places in the record.

[2] Oral argument was held in this case on September 10, 2024, and is archived on the court's website. See Court of Appeals of Georgia, Oral Argument, Case No. A24A1422 (Sept. 10, 2024), available at https://vimeo.com/1009737965.

We thank the Georgia Legal Foundation for its amicus brief in this case.

authority to substitute itself as a factfinding body in lieu of the Board. Indeed, as a reviewing court, our role is . . . to review the Board's award for the sole purpose of determining whether its findings are supported by any record evidence. If this [c]ourt answers that question in the affirmative, the Board's findings are conclusive and binding, regardless of whether we would have reached the same result if given the opportunity to weigh the evidence in the first instance.

*Burch v. STF Foods*, 353 Ga. App. 172, 176 (1) (836 SE2d 573) (2019) (citation and punctuation omitted).

Viewed in this light, the evidence showed that on July 16, 2012, McKay was injured in a serious four-wheeler accident. She was transported to a hospital via "life flight" and treated for multiple injuries, including fractured ribs, a broken wrist, a dislocated shoulder, a strained cervical ligament, and an acute compression fracture in her spinal cord.

In late 2020, Inalfa Roof Systems employed McKay as an assembly operator, a position that required the ability to stand and walk for up to 12 hours; to stoop, kneel, and crouch; and to repetitively lift, carry, push, and pull up to 50 pounds. As part of the hiring process, McKay underwent a physical examination and completed a post-hire questionnaire. In hiring McKay, Inalfa relied upon both the physical

3

examination and the questionnaire to determine if she could meet the physical demands of the job. The questionnaire asked about prior injuries, including broken bones or other injuries to her neck, back, shoulder, or knee. McKay responded "no" to these questions; she did not disclose the injuries she sustained in the 2012 accident. The Board found that McKay's false representations on the questionnaire were knowing and wilful, and the record contains evidence supporting that finding.

On June 11, 2021, McKay injured her back while working on the assembly line. She was in significant pain and was taken to human resources in a wheelchair and then transported to the hospital in an ambulance. Her treating physician determined that McKay had aggravated her prior injury.

McKay was out of work until September 9, 2021, when she returned to work for Inalfa in the same position as an assembly operator. By that time, McKay had "clearly mentioned the [2012] incident at work" (a finding made by the administrative law judge and adopted by the Board). She told her supervisor that she had injured her back in a previous vehicle accident, that the June 11 incident may have aggravated that pre-existing condition, and that her injuries from the previous accident continued to bother her.

On September 14, 2021, McKay injured her neck and back as she was reaching across the assembly line to pick up brackets. Her treating physician determined that the September 14 injury was related to McKay's prior injuries.

McKay filed notices of claims for workers' compensation benefits for both the injury she sustained on June 11 and the injury she sustained on September 14. In this appeal, she challenges only the denial of her claim for benefits for the September 14 injury, so we do not address that part of the judgment denying her claim for benefits for the June 11 injury.

2. *Analysis*

The Workers' Compensation Act "is intended to provide a complete and exclusive system and procedure for the resolution of disputes between employers and employees who are subject to [it] concerning accidents and injuries arising out of and in the course of employment. . . ." OCGA § 34-9-23. Under the Act, "workers receiv[e] a guarantee of prompt benefits for work-related injuries without regard to fault or common-law defenses and without the delay inherent in tort litigation." *Doss v. Food Lion*, 267 Ga. 312, 313 (2) (477 SE2d 577) (1996). The Act "shall be liberally construed only for the purpose of bringing employers and employees within [its]

provisions . . . and to provide protection for both." OCGA § 34-9-23. We construe and apply its provisions "impartially to both employers and employees." Id.

Under the Act, employees may recover benefits for the aggravation of pre-existing injuries. See *Doss*, 267 Ga. at 312 (1). Recognizing that "an employer takes an employee as he finds him," our Supreme Court in *Rycroft* provided for a defense to employers if an employee falsely represented his pre-employment physical condition during hiring. *Rycroft*, 259 Ga. at 158-160. To be entitled to that defense,

> (1) The employee must have knowingly and wilfully made a false representation as to his physical condition. (2) The employer must have relied upon the false representation and this reliance must have been a substantial factor in the hiring. (3) There must have been a causal connection between the false representation and the injury.

Id. at 158 (citation and punctuation omitted).

The *Rycroft* defense is based on common law, rather than statute. See *Rycroft*, 259 Ga. at 160 (holding that "legislative action is unnecessary to apply the fundamental concepts of the common law of this state" to bar workers' compensation benefits if the elements of the defense are met); *Snapper Power Equip. Co. v. Crook*, 206 Ga. App. 373, 375 (1) (425 SE2d 393) (1992) (*Rycroft* used common law principles of

6

fraud and contract to "fill in gaps" in the workers' compensation scheme established by our legislature). It adopts "a test originally set forth in 1B Larson's Workmen's Compensation Law § 47-53[.]" *Fort Howard Corp. v. Devoe*, 212 Ga. App. 602, 603 (442 SE2d 474) (1994). The *Rycroft* Court

> determined that the adoption of this defense was consistent with Georgia public policy, in that it promotes truthfulness in employment applications and upholds Georgia statutory law voiding contracts procured through fraud. Further, the court found the defense to be consistent with the requirements of the Georgia Subsequent Injury Trust Fund, OCGA § 34-9-350 et seq. . . .

*Caldwell v. Aarlin/Holcombe Armature Co.*, 267 Ga. 613 (481 SE2d 196) (1997) (citation omitted).[3] See *Rycroft*, 259 Ga. at 159 (discussing rationale for adopting defense).

McKay's first on-the-job injury, on June 11, falls squarely within the *Rycroft* defense; the evidence supports the Board's findings that McKay knowingly and wilfully made a false representation to Inalfa about a prior back injury during the hiring

---

[3] In 2004, the General Assembly enacted legislation providing for the dissolution of the Subsequent Injury Trust Fund. OCGA § 34-9-368. For this reason, the amicus curiae argues that the *Rycroft* defense "is no longer relevant or applicable under current Georgia law." But the existence of the Fund was not the only rationale given for the adoption of the defense. The continued viability of the *Rycroft* defense is for our Supreme Court to determine.

process; that Inalfa relied upon that false representation, which was a substantial factor in her hiring; and that a causal connection exists between the prior back injury and the injury McKay sustained on June 11, 2021. See *Gordon County Farm v. Cope*, 212 Ga. App. 812, 813 (442 SE2d 896) (1994) (*Rycroft*'s causation requirement concerns the connection between the employee's pre-existing physical condition, which was the subject of the false representation, and the injury for which the employee seeks benefits); *Fort Howard Corp.*, 212 Ga. App. at 604 (applying *Rycroft* defense where an employee made a false representation on a post-hiring medical questionnaire and, had the employee answered truthfully, the employer would not have allowed the employee to begin work without further investigation).

But as stated above, McKay does not challenge the denial of workers' compensation benefits for the June 11 injury. She only appeals the denial of her claim for benefits for her second on-the-job injury, on September 14, 2021. She argues that the rationales identified by the *Rycroft* Court do not support applying the defense to the September 14 injury, because by the time that injury occurred, Inalfa had learned about her pre-employment injury and her false representation about it and, despite that knowledge, had retained McKay in her position as an assembly operator.

We have found no Georgia authority on this issue, nor have we been persuaded by the authorities from other jurisdictions cited by the parties, none of which are exactly on point. But this court has refused to apply *Rycroft* in a "narrow, formulaic fashion." *Shepherd Center v. Williams*, 251 Ga. App. 560, 563 (553 SE2d 872) (2001) (punctuation omitted). The common law underpinnings of the *Rycroft* defense — theories of fraud and fraudulent inducement to contract — require that a party rely on the false representation to his detriment, *Bimbo Builders v. Stubbs Properties*, 158 Ga. App. 280, 281 (1) (279 SE2d 730) (1981), and that the reliance be justified. *Hicks v. Sumter Bank & Trust Co.*, 269 Ga. App. 524, 527 (1) (604 SE2d 594) (2004). In the fraudulent-inducement-to-contract context, a party's failure to rescind or repudiate the agreement after learning of the fraudulent representation acts as a waiver of that defense. *Little Sky, Inc. v. Rybka*, 264 Ga. App. 744, 746-747 (1) (592 SE2d 154) (2003). By analogy, Inalfa's willingness to retain McKay in the assembly operator position, after learning of her prior back injury and false representation about it, waives its right to use the *Rycroft* defense to deny McKay workers' compensation benefits for the subsequent injury she suffered.

For this reason, we conclude that the Board erred in using the *Rycroft* defense to deny McKay workers' compensation benefits for her September 14 injury, and the superior court erred in affirming the Board's ruling as to the September 14 injury.

*Judgment reversed in part. Mercier, C. J., and Rickman, P. J., concur.*