## A91A1474. SPEIR v. NICHOLSON et al.
### (414 SE2d 533)

BEASLEY, Judge.

Elzie Speir, Sr., brought suit against Thomas and Carol Nicholson and three other defendants for nonpayment of promissory notes given in connection with the purchase of certain assets of his insurance company. Related cases are *Speir v. Nicholson*, 193 Ga. App. 444 (388 SE2d 42) (1989), and *Speir v. Nicholson*, 198 Ga. App. 383 (401 SE2d 588) (1991). He appeals the judgment in favor of defendants following the grant of their motion for directed verdict.

On May 13, 1982, Carol Nicholson and the three other defendants, as purchasers, and Speir Insurance Agency, Inc., as seller, entered into a "CONTRACT AND AGREEMENT" (the May 13 contract) to purchase "the listed property insurance expirations and casualty insurance expirations, as well as supporting documents incidental to said business located at" Speir Agency's Douglasville and Dallas offices. (An expirations list names the insurance policyholders of an insurer in chronological order based upon the expiration dates of the policies within the insurer's book of business, so that the insurer may contact the insured prior to that date and request that the policy be renewed for a stated premium.)

A "mutual covenant not to compete" was agreed upon, stating: "It is agreed that for [a period ending 48 months from May 13, 1982] by the parties signed as Purchasers there will be no solicitation of the customers or policyholders of SPEIR INSURANCE AGENCY, INC. directly or indirectly. . . ." The contract was made binding upon the parties and "their respective successors, assigns, executors, and administrators."

The total contract price was $215,607.58: $500 for good will, $109,107.58 for the covenant not to compete, $6,000 for the furniture and fixtures, and $100,000 for the listed expirations.

The cash consideration for the sale was $15,000 at closing and the balance of $200,607.58 payable according to notes listed in an addendum. The addendum provided that the balance was to be paid under a "MONTHLY INSTALLMENT NOTE" in the amount of $200,607.58 with the purchasers assuming liability for: (1) one $20,432.44 note payable by Speir Agency to Jerry Taylor (who is not a party); and (2) four notes totaling $86,333.19 payable by the Speir Agency to Elzie Speir and payable to Elzie Speir by the purchasers in monthly installments of $2,522.38. Under the MONTHLY INSTALLMENT NOTE, the remaining $93,841.98 was to be paid to Speir

Agency in monthly installments of $1,552.67.

Less than two weeks after the parties entered into the May 13 contract, Speir Agency filed a voluntary petition for reorganization under Chapter 11 of the federal Bankruptcy Code.

On July 23 the trustee in bankruptcy sold the insurance expirations of Speir Agency's Douglasville and Dallas accounts to another insurance agency under a document referred to as the Hamby Purchase Agreement. The trustee drafted a letter for Hamby to deliver to insurance agencies advising them that the trustee had appointed Hamby as the trustee's representative authorized to deal directly with all carriers and others in transacting any business with respect to policies formerly written through Speir Agency, including "all expirations and renewal rights, new or additional amounts or types of insurance coverage, and all commissions resulting from such coverage or renewal thereof."

Thomas Nicholson testified that, as a result of that letter, he was informed by insurance companies that they could not enter into agreements with his agency because the bankruptcy court had awarded Speir Agency's book of business to Hamby. One insurance company cancelled a contract, stating that it "couldn't serve two masters." Policyholders in Douglasville and Dallas informed Nicholson that they had received renewal notices from Hamby and sent in their premiums.

The purchasers paid Speir in May, June, and July of 1982 but ceased after the expirations lists were sold to Hamby. Speir sued for nonpayment of certain of the notes payable under the May 13 contract.

1. Speir sues as a third-party beneficiary and assignee of express or implied agreements between the defendants and Speir Agency. As such, his rights are no greater than those of the promisee. *Deal v. Chemical Constr. Co.*, 99 Ga. App. 413, 417 (1) (108 SE2d 746) (1959) (third-party beneficiary) *Lankford v. Holton*, 78 Ga. App. 632, 634 (51 SE2d 687) (1949) (assignee).

After Speir Agency filed its bankruptcy petition, the trustee in bankruptcy succeeded to all causes of action held by the debtor, including actions arising under contracts. 11 USC § 541 (a) (1); *Miller v. Shallowford Community Hosp.*, 767 F2d 1556, 1559 (1) (11th Cir. 1985). The trustee had the right to assume or reject executory contracts, subject to the bankruptcy court's approval. 11 USC §§ 365 (a); 502 (g). Parties to rejected executory contracts had a claim against the estate. 11 USC § 502 (g).

The record shows that the trustee in bankruptcy, with the court's approval, sold the expirations lists for Speir's Douglasville and Dallas offices to Hamby without exclusion. The trustee thus repudiated the contract to the extent that it was executory, thereby discharging the

purchasers from further performance. See OCGA § 13-4-22; *Whitley Constr. Co. v. Virginia Supply & Well Co.*, 99 Ga. App. ·419 (1) (108 SE2d 819) (1959).

Speir advances several arguments as to why it was error to grant defendants' motion for directed verdict.

(a) The first argument is that the evidence established that Speir Agency in fact gave the expirations lists to the purchasers. Speir relies upon plaintiff's Exhibit 2, which is a receipt in the handwriting of Carol Nicholson stating: "Received from Tommy Speir Expirations through 1989 Carol Nicholson Dallas & Douglasville."

Carol and Thomas Nicholson testified as follows: Although the above receipt was in Carol's handwriting, she did not remember writing it. In any event, they did not in fact receive the expirations lists, and they could not have received such lists through 1989 since none of the insurance policies in their book of business was for terms in excess of three years. The expirations lists were maintained on the computer located in Speir Agency's central office in Forest Park. They would have received computer printouts of insurance policy expirations from the central office within 30 to 45 days prior to expiration. Having closed the purchase in May of 1982, they would have received the June expirations.

They did receive several boxes of microfiche containing information on the Douglasville and Dallas office accounts. However, it was difficult to get information concerning insurance policy expirations from the microfiche, since it was not very legible and listed thousands of active and inactive insurance accounts in alphabetical order rather than in chronological order based on the policy expiration dates. Although they did contact some customers through use of the microfiche and solicitations, the few customers they retained were either personal friends or policyholders of the company when it was Nicholson Insurance Agency.

Viewed in its entirety, the evidence established without conflict that the defendants did not receive the expirations lists for which they had bargained.

(b) The next argument is that the parties' contract contained no prohibition against the sale of the expirations lists to another party. Sale of the lists to another party violated the covenant not to compete and thus was antagonistic to the reasonable contemplation of the parties.

In addition, the trustee in bankruptcy did more than deliver the expirations lists to Hamby. He appointed Hamby, in effect, as the trustee's exclusive agent in Douglasville and Dallas, clearly departing from the parties' contract.

(c) The third argument is that since the expirations lists were not attached to those copies of the May 13 contract and the Hamby

Purchase Agreement which were admitted in evidence, there is no positive proof that the expirations actually sold to Hamby were the same as the expirations sold to the purchasers.

The expirations lists were not attached to the May 13 contract because the defendants were never given the lists. Although the expirations lists were supposed to have been contained in an exhibit to the Hamby Purchase Agreement, the parties agreed not to do this because the lists were too voluminous and the parties did not want to make them matters of public record.

The May 13 contract and the Hamby Purchase Agreement establish without conflict that the expirations which Speir Agency was contractually obligated to sell to the defendants were the same as those which the trustee, with the approval of the bankruptcy court, was contractually obligated to sell to Hamby.

2. By showing that the purchasers had executed the note and that it was past due and in default, Speir established a prima facie right to judgment, casting on the purchasers the burden of pleading and establishing an affirmative defense to plaintiff's claim. *Citizens Bank, Douglasville v. Wix*, 154 Ga. App. 249 (267 SE2d 856) (1980). Failure of consideration and breach of contract were the defenses. Proof of total or partial failure of consideration entitles defendant to an abatement of purchase price to the extent that the consideration may have failed. *Coast Scopitone v. Self*, 127 Ga. App. 124, 126 (1) (192 SE2d 513) (1972). See OCGA § 9-11-8 (c).

For various reasons, Speir maintains that the defendants' real grievance is that the expirations lists were not worth what they paid for them, and that "[m]ere inadequacy of consideration alone will not void a contract. . . ." OCGA § 13-3-46. He argues that, at most, there was only a partial failure of consideration, since the purchasers do not deny that they received the good will, furniture, and fixtures cumulatively valued at $6,500 under the parties' contract, and that he has not recouped these sums.

The purchasers paid $15,000 in cash at closing and three monthly installments to Speir totaling $7,567.14, thereby paying more than $6,500 to both Speir Insurance Agency and Speir. Thus, the consideration the purchasers gave exceeded that which they received and there was a total failure of the consideration due them. "Where it is apparent, from the uncontradicted evidence, that there is a total failure of consideration as to the contract sued on, it is not error to direct a verdict in favor of the defendant." *Reynolds v. Nevin*, 1 Ga. App. 269 (57 SE 918) (1907). The remaining provisions of the contract clearly are not severable from the provision concerning the sale of the expirations lists. See *Williams v. Claussen-Lawrence Constr. Co.*, 120 Ga. App. 190 (169 SE2d 692) (1969).

Under the criteria in OCGA § 9-11-50 (a), the trial court did not

err in granting a directed verdict, in that "there [was] no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom" demanded a verdict in defendants' favor.

3. The remaining enumerations and arguments need not be addressed.

*Judgment affirmed. Carley, P. J., and Judge Arnold Shulman concur.*

DECIDED JANUARY 6, 1992.

*Bannister & Black, Charles C. Black,* for appellant.
*Swift, Currie, McGhee & Hiers, James W. Dilz, Jane C. Barwick,* for appellees.