McFadden, Presiding Judge, concurring in part and dissenting in part.
Wendy Jordan asserted three alternative claims against Marriott to recover the value of the stolen jewelry she had entrusted to Marriott: a claim under two provisions of the innkeeper statutes, OCGA §§ 42-21-8 and 42-21-12; a claim for breach of bailment; and a claim for breach of contract. She also sought attorney fees for, among other things, bad faith. I would hold the evidence sufficient to go to a jury on all three of those claims and that the applicability of a $1,000 liability limit under the innkeeper statutes is likewise a jury question.
The trial court denied Marriott's motion for summary judgment on the innkeeper-statutes claim, but limited Marriott's liability on that claim to $1,000. He granted summary judgment to Marriott on the claims for breach of bailment, breach of contract, and attorney fees based on stubborn litigiousness. And he denied summary judgment to Marriott on the bad faith attorney fee claim.
The majority would affirm the denial of summary judgment on the innkeeper statutes and bad faith attorney fee claims and the grant of summary judgment on the breach of bailment and breach of contract claims. I agree with the majority in two respects: that Marriott is not entitled to summary judgment on the negligence per se claim or the claim for attorney fees based on bad faith. But I disagree with the majority's holding that the negligence per se claim must be capped at $1,000. And I disagree with the majority that Marriott is entitled to summary judgment on the breach of bailment and breach of contract claims. So I respectfully dissent in part.
*831 1. Innkeeper statutes.
"At common law an innkeeper was an insurer of the goods of his guest." Jones v. Savannah Hotel Co. , 141 Ga. 530, 81 S.E. 874 (1914). The innkeeper statutes were enacted "to relax the stringent rule of the common law, so as to permit the innkeeper to protect himself against liability under certain circumstances." Id. I would hold that it is for a jury to decide whether those circumstances obtain here.
So I agree with the majority that Jordan's claim under the innkeeper statutes should proceed to a jury (although I concur in judgment only in Division 1 (a) because I do not agree with the emphasis the majority places on the evidence of a lack of a formal check-out). I disagree, however, that Jordan's potential recovery on that claim should be capped at $1,000, so I dissent to Division 1 (b).
Jordan brought her innkeeper statutes claim under two provisions of Georgia's innkeeper statutes, OCGA §§ 42-21-8 and 42-21-12. Those Code sections concern the liability of a hotel[1] for property entrusted to it by a guest. OCGA § 42-21-8 provides: "An innkeeper shall exercise extraordinary diligence in preserving the property entrusted to his care by his guests, provided that, if the loss of such entrusted property occurs through theft and if the guest has complied with all reasonable rules of the inn, the innkeeper shall be liable as an insurer of the stolen property." And OCGA § 43-21-12 sets out the circumstances when that liability is limited to $1,000:
In case of loss of property entrusted by a guest to an innkeeper, it will be presumed that the innkeeper failed to exercise extraordinary diligence with regard to such property. ... The liability of the innkeeper for loss or injury to personal property placed by any guest under the innkeeper's care, other than valuable articles which must be delivered to the innkeeper to be deposited in a safe or other place of deposit, shall not exceed the sum of $1,000.00, provided that any guest may, at any time before loss, damage or destruction of the guest's property, notify the innkeeper in writing that the guest's property exceeds in value the sum of $1,000.00 and shall, upon demand of the innkeeper, furnish the innkeeper with a list or schedule of the same, with the value thereof, in which case the innkeeper shall be liable for the full value of such property in case of loss, damage, or destruction because of negligence on the innkeeper's part[.]
So the plain language of OCGA § 43-21-12 provides that an innkeeper which fails to exercise extraordinary diligence with regard to property entrusted to its care, as required by OCGA § 43-21-8, may be liable to a guest for the loss of that property in an amount exceeding $1,000 if: (1) the property did not fall within the exception pertaining to valuables that must be delivered to the innkeeper; (2) the guest notified the innkeeper in writing, before the loss, that the property was worth more than $1,000; and (3) the guest, if asked, provided the innkeeper with a list or schedule of the property and its value. As detailed below, the facts viewed in the light most favorable to Jordan show that these three prerequisites for liability exceeding $1,000 were met. I address each of these prerequisites in turn.
(a) Exception for valuables that must be deposited with innkeeper.
OCGA § 43-21-12 excepts from its provisions situations in which the property at issue was a "valuable article[ ] which must be delivered to the innkeeper to be deposited in a safe or other place of deposit[.]" (Emphasis supplied.) The majority finds that Jordan's jewelry fell within this exception. I disagree.
Reading the innkeeper liability statutes in pari materia, and construing them to give meaning to all the terms therein, see Arby's Restaurant Group v. McRae , 292 Ga. 243, 245 (1), 734 S.E.2d 55 (2012), the exception in OCGA § 43-21-12 refers to other Code sections authorizing an innkeeper to require valuables to be deposited in a safe or other place of deposit provided by the innkeeper and establishing limits to the innkeeper's liability for them. OCGA § 43-21-10 provides:
*832 The innkeeper may provide a safe or other place of deposit for valuable articles and, by posting a notice thereof, may require guests of the innkeeper to place such valuable articles therein or the innkeeper shall be relieved from responsibility for those articles. For all valuable articles placed by a guest with an innkeeper for safekeeping, the innkeeper shall give a receipt therefore to evidence the face of such deposit.
If the guest does not possess the receipt for articles claimed to have been lost, the innkeeper's liability is limited to $750. Id. And OCGA § 43-21-11 provides that if the valuables deposited with the innkeeper are in a container, the innkeeper's liability is limited to $1,000 unless the guest and the innkeeper contract in writing for a higher amount. Here, instead of providing a common safe or other place of deposit so that guests could deliver valuables to the innkeeper for safekeeping, Marriott provided an individual safe for each room; and Jordan put her jewelry in the safe provided to her.
While OCGA § 43-21-11 is not expressly limited to valuables that must be delivered to the innkeeper pursuant to OCGA § 43-21-10, our rules of statutory interpretation require that it be construed to be so limited. Otherwise, OCGA § 43-21-11 would be an additional exception to OCGA § 43-21-12 not contained in that Code section's language. Reading an additional exception into OCGA § 43-21-12 goes against our obligation to strictly construe that Code section, as it is a statute in derogation of common law. See generally Couch v. Red Roof Inns , 291 Ga. 359, 364, 729 S.E.2d 378 (2012) (statutes in derogation of common law must be strictly construed).
So the exception to OCGA § 43-21-12 for "valuable articles which must be delivered to the innkeeper to be deposited in a safe or other place of deposit" does not apply to the facts of this case, viewed in the light most favorable to Jordan. Jordan initially placed her jewelry in her hotel room safe, consistent with the requirement of OCGA § 43-21-10. Employees of Marriott removed the jewelry from that safe before its loss. Marriott employees also removed the jewelry from its bag and inventoried the jewelry before its loss, meaning that Marriott knew what was in the bag. After inventorying the jewelry, Marriott did not immediately place it in a safe, as Marriott had told Jordon it would do. Instead, for several days Marriott left the jewelry in a locked office that was accessible to a number of Marriott employees. In other words, Marriott did not treat the jewelry as a deposit of valuables under OCGA § 43-21-10 or OCGA § 43-21-11. Moreover, at the time of the loss, Jordan was under no obligation to deliver the jewelry to Marriott pursuant to OCGA § 43-21-10. She could have made another arrangement for the jewelry.
Given these facts, the first prerequisite for liability exceeding $1,000 under OCGA § 43-21-12 was met: the jewelry did not fall within the exception pertaining to valuables that must be delivered to the innkeeper.
(b) Notification in writing.
Viewed most favorably to Jordan, the evidence showed that she sent a text message to a Marriott employee stating that the jewelry she had left in her room safe had a value exceeding $1000. The Marriott employee immediately shared this information with a Marriott manager, and Marriott acted on the information. This occurred before the jewelry was lost. A jury could find from these facts that Jordan met the written notification requirement of OCGA § 43-21-12. See generally Pierce v. State , 302 Ga. 389, 397-398 (2) (b), 807 S.E.2d 425 (2017) (treating text messages as writings in analyzing application of best evidence rule).
(c) List or schedule of property and value .
Finally, from the evidence, a jury could conclude that Marriott did not demand that Jordan furnish it with a list or schedule of the jewelry and its value. Consequently, Jordan was not required to provide that information to recover more than $1,000 under OCGA § 43-21-12.
2. Bailment.
I would reverse the trial court's grant of summary judgment as to Jordan's claim for bailment, so I dissent to Division 2. Because *833 it is undisputed that some of Jordan's jewelry was lost, Marriott as the bailee bears the burden of proving that it satisfied its duty of care. OCGA § 44-12-44. That duty, for purposes of a defense motion for summary judgment, was one of ordinary care because the evidence, viewed most favorably to Jordan, supports a finding that the bailment benefitted both parties. And there was evidence from which a jury could find that Marriott breached its duty of care.
(a) Evidence of mutual benefit supporting duty of ordinary care.
As the majority notes, our Code provides that "[d]ifferent degrees of diligence are required [of a bailee] according to the nature of the bailments[,]" OCGA § 44-12-43, and if the bailment is for the mutual benefit of the parties, the bailee must use ordinary care. See Merchants' Nat. Bank of Savannah v. Guilmartin , 88 Ga. 797, 799, 15 S.E. 831 (1892). While the "degree of negligence required to impose liability upon a bailee is generally a question of law to be determined by the court[,]" Atlanta Limousine Airport Servs. v. Rinker , 160 Ga. App. 494, 495 (1), 287 S.E.2d 395 (1981) (citation omitted), the evidence in this case, viewed most favorably to Jordan, gives rise to a question of fact as to whether Marriott received a benefit from agreeing to take Jordan's jewelry into safekeeping. There is evidence that Marriott benefitted from the bailment in the form of good will, both in its frequent guest, Jordan, and in the broader universe of its other guests and potential guests. See Electro-Medical Devices v. Urban Medical Servs. , 140 Ga. App. 776, 777-778 (1), 232 S.E.2d 106 (1976) (evidence of good will flowing to bailee can support finding of mutual benefit in bailment). Certainly, a jury could conclude that Marriott would not have been willing to enter into the bailment with Jordan concerning her jewelry if she had been a stranger who walked in from the street, rather than a hotel guest.
(b) Evidence of breach of duty of ordinary care.
There is evidence that for several days Marriott left the jewelry in an office to which a number of employees had access, and that this act violated Marriott's policy of placing items left by guests in a safe deposit box if the items had a value greater than $50. This evidence created a genuine issue of material fact regarding whether Marriott breached its duty of ordinary care to Jordan.
3. Breach of contract.
Finally, I would reverse the trial court's grant of summary judgment to Marriott on Jordan's contract claim, so I dissent to Division 3. Any benefit accruing to the promisor constitutes consideration. See Pepsi Cola Bottling Co. v. First Nat. Bank , 248 Ga. 114, 116 (2), 281 S.E.2d 579 (1981). The good will Marriott maintained by agreeing to keep the jewelry safe, discussed above, was consideration for that agreement. See Speir v. Nicholson , 202 Ga. App. 405, 408 (2), 414 S.E.2d 533 (1992) (rejecting party's claim of failure of consideration because party received good will, among other things). And "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." O.C.G.A. § 13-3-44 (a).

A hotel such as Marriott falls within the definition of an "inn." OCGA § 43-21-1 (2).