**SECOND DIVISION**
**ANDREWS, P. J.,**
**MCFADDEN and RAY, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**November 13, 2014**

# In the Court of Appeals of Georgia

A14A0915. N4D, LLC v. PASSMORE et al.

MCFADDEN, Judge.

This appeal is from a trial court order in a business dispute on opposing motions for summary judgment. The trial court denied the plaintiff's motion in its entirety, and granted the defendants' motions in part and denied them in part. The plaintiff appeals, but as undisputed evidence establishes that its claims are barred by a contractual period of limitations or waived, it has failed to show that there exist genuine issues of material fact, and we affirm.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. We review a trial court's grant of summary judgment de novo, construing the evidence, and all reasonable conclusions and inferences drawn from it, in favor of the nonmovant." *Clay v.*

*Oxendine*, 285 Ga. App. 50 (645 SE2d 553) (2007) (citations and punctuation omitted).

So viewed, the evidence shows that beginning in May 2003, 3DH Corporation and its successor in interest, N4D, LLC, entered into a series of software development agreements and other contracts with Passmore Labs. Passmore Labs agreed to help develop technology for the conversion of two-dimensional images into three-dimensional images for use in film and other industries. The initial software development agreement of May 2003 contained a section entitled "Statute of Limitations," which provided: "No action, regardless of form, arising out of the services under this Agreement, may be brought by either party more than one year after the cause of action has accrued, except that an action for nonpayment may be brought within one year of the date of the last payment." The parties amended the agreement on three occasions, but did not alter the contractual period of limitation. In July 2009, the parties entered into another software development agreement which contained the same one-year "Statute of Limitations" section.

On December 15, 2010, N4D filed a complaint against Passmore Labs, Gregory Passmore and others (collectively, "Passmore"), including claims for breach of contract, fraud and conversion. N4D claimed, among other things, that Passmore

2

violated the terms of the agreements by entering into contracts with another entity, Legend Films, Inc., and thereby disclosing the two-dimensional to three-dimensional conversion technology. The parties filed opposing motions for summary judgment. After a hearing, the trial granted Passmore's motions in part and denied them in part, and denied N4D's motion in its entirety. The trial court found, in pertinent part, that a number of N4D's claims were barred by the contractual one-year period of limitation. N4D appeals.

1. *Contractual period of limitation.*

N4D first enumerates that the trial court erred in holding that N4D cannot demonstrate fraud sufficient to toll the contractual one-year period of limitation on bringing suit. We disagree.

"[C]ontractual periods of limitation are generally enforceable under Georgia law[.]" *Hewitt Assoc. v. Rollins, Inc.*, 308 Ga. App. 848, 850 (1) (708 SE2d 697) (2011) (citation omitted). But if a defendant is "guilty of a fraud by which the plaintiff has been debarred or deterred from bringing an action, the period of limitation shall run only from the time of the plaintiff's discovery of the fraud." OCGA § 9-3-96. To establish the fraud

sufficient to toll a limitation period, the plaintiff must prove that (1) the defendant committed actual fraud involving moral turpitude, (2) the fraud concealed the cause of action from the plaintiff, and (3) the plaintiff exercised reasonable diligence to discover its cause of action within the applicable limitation period. If a confidential relationship exists between plaintiff and defendant, there is a greater duty on a defendant to reveal what should be revealed, and a lessened duty on the part of a plaintiff to discover what should be discoverable through the exercise of ordinary care.

*Hewitt Assoc.*, supra at 851 (1) (b) (citations and punctuation omitted).

In the instant case, pretermitting the issues of whether N4D has proved actual fraud involving moral turpitude, whether any such alleged fraud concealed the cause of action, and whether there was a confidential relationship between the parties, is the fact that, as early as 2008, N4D actually knew, through its predecessor in interest, of Passmore's relationship with Legend Films. In his affidavit, the former president of 3DH stated that in July 2008 he "[i]n fact . . . believed that Passmore Lab was performing 2D to 3D conversion work for Legend [Films] at [that] time," he understood "that Passmore Lab claimed that [it] and Legend Films had an ownership interest in the 2D to 3D conversion technology," and he "believed this ownership dispute was a significant and material issue that should be immediately addressed at [that] time."

The company president further averred that in a telephone conversation and email, attached as an exhibit to his affidavit, he addressed the issue with the principal owner of both 3DH and N4D, as well as board of directors members and other major figures in the company. They discussed "whether [they] should send Passmore Lab a breach notice(s), based on multiple grounds." One of the breach grounds discussed was Passmore's contracts with other entities, and "[o]ne such agreement that was discussed[] was Passmore Lab's agreement with Legend."

The record also contains an affidavit of the chief executive officer of N4D. In his affidavit, the CEO indicates that as early as September 2009 and no later than November 3, 2009, he was told that "Passmore Lab was working with Legend Films and that Passmore Lab and Legend were directly competing against 3DH and N4D, using technology owned by 3DH and, later, N4D."

The evidence plainly shows that N4D was aware of the alleged breach based on Passmore's relationship with Legend as early as 2008 and no later than November 2009, and thus it had a duty to exercise reasonable diligence to discover its cause of action within the contractual one-year period of limitation. "A party may fail to exercise due diligence as a matter of law. [N4D] plainly had knowledge [of Passmore's conduct], and this knowledge commenced the running of the [contractual

5

period] of limitation: it was sufficient to put appellant on notice so that by the exercise of due diligence [it] should have discovered the alleged fraud." *Bauer v. Weeks*, 267 Ga. App. 617, 620 (600 SE2d 700) (2004) (citations and punctuation omitted).

As the trial court correctly ruled, the undisputed evidence of record established that N4D "was on notice of its requirements to investigate/pursue its claims by November 3, 2009, at the latest, and by July 31, 2008 at the earliest. As the instant Complaint was not filed until December 15, 2010, any and all claims [N4D] brought based on and arising out of the services under the agreements are time-barred." (Punctuation omitted.) See *Koncul Enterprises v. Fleet Finance*, 279 Ga. App. 39, 41 (1) (b) (630 SE2d 567) (2006) (trial court correctly ruled that breach of contract claims were time-barred where plaintiff not only had reason to believe that breach had occurred by particular date, "but actually believed at that time that such breach had occurred").

2. *Rescission.*

In July 2009, N4D and Passmore entered into a Technology Cross-License Agreement (TCLA) that was not subject to the one-year period of limitation. N4D sought rescission of that agreement, but the trial court ruled that it had waived any

purported right to seek rescission. N4D enumerates this ruling as error. However its argument in support of this alleged error essentially consists of the conclusory statement that because there remain issues of fact as to fraud the trial court erred. N4D's cursory argument in support of its enumeration of error is without merit.

> It is a well settled rule that if a party who is entitled to rescind a contract because of fraud or false representation, when he has full knowledge of all the material circumstances of the case freely and advisedly does anything which amounts to the recognition of the transaction, or acts in a manner inconsistent with its repudiation, it amounts to acquiescence, and, though originally impeachable, the contract becomes unimpeachable even in equity. It is incumbent upon a party who attempts to rescind a contract for fraud to repudiate it promptly on discovery of the fraud. If he does not, he will be held to have waived any objection, and to be conclusively bound by the contract as if no fraud or mistake had occurred.

*Jernigan Auto Parts v. Commercial State Bank*, 186 Ga. App. 267, 271 (3) (367 SE2d 250) (1988) (citation and punctuation omitted).

Here, as recounted above, the evidence plainly shows that N4D and its predecessor have known of Passmore's working relationship with Legend Films since at least 2008 and no later than November 2009, both before and after formation of the TCLA. Accordingly, the trial court correctly ruled that N4D had waived any right to rescind the agreement and "correctly granted appellee[s'] motion for summary

7

judgment. [Cits.]" *Flair Fashions v. SW CR Eisenhower Drive*, 207 Ga. App. 78, 80 (427 SE2d 56) (1993) (citations omitted).

3. *Remaining enumerations.*

Because of our holdings above, we need not address the appellant's remaining enumerations of error, concerning an alternative basis for the court's summary judgment ruling on the conversion claim and the denial of the opposing summary judgment motion.

*Judgment affirmed. Andrews, P. J., and Ray, J., concur.*