**FIFTH DIVISION
MCFADDEN, P. J.,
BARNES, P. J., and LAND, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**January 31, 2023**

# In the Court of Appeals of Georgia

A22A1730. BPG INSPECTION, LLC et al. v. OMSTEAD.

LAND, Judge.

This is an appeal from a grant of partial summary judgment to plaintiff Jessique Omstead in her wrongful death action against BPG Inspection, LLC and James Golden. Plaintiff's husband engaged BPG to inspect a home that he and plaintiff subsequently purchased. Golden was the home inspector for BPG who inspected the home in February 2020 and returned for a follow-up inspection in March 2020. More than a year after this inspection occurred, a retaining wall between the house and the driveway collapsed onto Mr. Omstead, resulting in his tragic and untimely death. Plaintiff sued BPG and Golden for wrongful death, asserting claims sounding in tort and contract.

The BPG inspection contract that plaintiff's husband signed contained several provisions seeking to limit the liability of BPG and its employees, including a one-year limitation period for the filing of lawsuits (whether those lawsuits asserted claims sounding in tort, contract, or otherwise) and a contractual cap on damages. The parties moved for summary judgment with respect to the applicability and enforceability of these provisions. The trial court granted plaintiff's motion and denied defendants' motion, ruling that these provisions did not apply to plaintiff's claims, and to the extent they did, were void as against public policy. Defendants appeal, arguing that the contract's one-year limitation period and its cap on damages apply to this case and should be enforced. We agree with the defendants with respect to the one-year limitation period and therefore reverse. Because this ruling is dispositive of the case, we need not address the defendants' other arguments.

"The interpretation of a contract is normally a question of law to be resolved by the court, and the orders of the lower court in this case are therefore subject to de novo review." (Citation and punctuation omitted.) *Sherwood v. Williams*, 347 Ga. App. 400, 405 (2) (820 SE2d 141) (2018). So viewed, the record shows that on February 13, 2020, Mr. Omstead signed an agreement engaging BPG to inspect a house that he and Mrs. Omstead were considering purchasing in exchange for an

inspection fee of $380. The agreement provided in relevant part that the inspection would be "an impartial, noninvasive, visual examination of specific systems, structures, and components of buildings located on the subject property, as they exist at the time of the inspection" and further specified that the "inspection will be limited to those specific installed systems, structures and components that are readily accessible and visually observable." The agreement specified that the inspection would not include "engineering inspections and/or code compliance inspections" and that the inspector would not "speculate regarding the presence or absence of concealed conditions, latent defects or the future performance" of the house and its systems and structures.

In a section headed "LIMITATIONS ON LIABILITY," the agreement sought to limit the defendants' liability in several respects, including the following:

> **IF YOU DISCOVER A DEFECT FOR WHICH WE MAY BE LIABLE TO YOU, YOU MUST PROMPTLY NOTIFY US, BUT IN ALL CASES WITHIN 14 DAYS OF DISCOVERY, AND GIVE US A REASONABLE OPPORTUNITY TO RE-INSPECT THE PROPERTY BEFORE YOU REPAIR OR REPLACE THE DEFECT. . . .**

> **BPG'S LIABILITY TO YOU FOR CLAIMS ARISING FROM OR RELATED IN ANY WAY TO OUR INSPECTION OR OUR**

3

**REPORT, INCLUDING, WITHOUT LIMITATION, ERRORS AND OMISSIONS . . . WILL NOT BE MORE THAN THE LESSER OF ACTUAL DAMAGES OR TEN TIMES (10X) THE INSPECTION FEE. . . .**

***YOU MAY NOT FILE A LEGAL ACTION, WHETHER SOUNDING IN TORT (EVEN IF DUE TO OUR NEGLIGENCE OR OTHER FAULT), CONTRACT, ARBITRATION OR OTHERWISE,* AGAINST US OR OUR EMPLOYEES *MORE THAN ONE YEAR AFTER THE INSPECTION,* EVEN IF YOU DO NOT DISCOVER A DEFECT UNTIL AFTER THAT. THIS TIME LIMIT MAY BE SHORTER THAN THE LAW OTHERWISE PROVIDES.**

(Capitalization and bold in original; italics supplied.) By signing the agreement, Mr. Omstead acknowledged that he "ha[d] carefully read the entirety of this Agreement including any limitations of liability and agree[d] to the terms herein."

On the same day that Mr. Omstead signed the agreement, BPG's employee James Golden performed the inspection. Golden is not an engineer and did not hold himself out as one. The report he prepared and gave to the Omsteads included the following:

[H]ome inspections include a *visual examination* of *readily accessible* systems and components to help *identify material defects as they exist*

4

> *at the time of the inspection. . . .* Latent, inaccessible, or concealed defects are excluded from this inspection.

(Underline in original). Among the structures Golden inspected was a retaining wall that ran the length of the house's driveway. The wall stood approximately seven feet tall at its highest point, was constructed of concrete blocks, and did not have any drainage holes. The report noted that the wall had been "[i]nspected," which the report defined as "visually observed and appear[ing] to be functioning as intended." On March 7, 2020, Golden returned to the property to reinspect several items that Mr. Omstead had asked the sellers to repair. The retaining wall was not one of these items.

After receiving the inspection reports, the Omsteads purchased the property. On July 16, 2020, having discovered that water was leaking into the garage through the drywall running parallel to the retaining wall, plaintiff posted on Instagram that "there are cracks in the retaining wall that spit water when it rains, but no official drain holes." The Omsteads did not notify BPG of these observations.

On July 19, 2021, more than a year after the completion of the home inspection, the Omsteads placed a plastic tarp and a piece of particle board on top of the retaining wall during a rainstorm to divert water away from the garage. As plaintiff stood on

5

the embankment behind the wall and Mr. Omstead stood on the driveway near the garage, the wall collapsed onto Mr. Omstead. He died shortly afterward as a result of blunt force trauma to his torso and lacerations to his liver. The collapse of the wall revealed that a wooden crosstie wall had been left in place behind the wall, that the cells of the concrete blocks were unfilled and lacked rebar, and that no gravel had been used in the construction of the wall.

In September 2021, after giving notice to BPG of the collapse, plaintiff filed this wrongful death action alleging negligence, fraud, breach of contract, and breach of warranty against BPG and Golden.[1] The defendants moved for summary judgment to enforce the agreement's one-year limitation provision and its cap on damages. Plaintiff filed a cross-motion asking that the trial court declare these provisions of the agreement inapplicable to this case and void as against public policy. After a hearing, the trial court denied defendants' motion and granted plaintiff's motion based on its conclusion that neither of the provisions applied to this case, and to the extent they did apply, they were both exculpatory clauses that were void as against public policy. Defendants now appeal from these rulings.

---

[1] The complaint included three counts sounding in negligence: "simple negligence," negligent misrepresentation, and negligent hiring and supervision.

6

1. Defendants first argue that the agreement's one-year limitation period is enforceable and applies to bar plaintiff's claims. We agree.

It is a matter of "longstanding precedent that a wrongful death action is wholly derivative of a decedent's rights of action." *United Health Svcs. of Ga. v. Norton*, 300 Ga. 736, 737 (2) (797 SE2d 825) (2017), citing *Southern Bell Telephone & Telegraph Co. v. Cassin*, 111 Ga. 575 (36 SE 881) (1900). Just as "the basis of the [wrongful death] cause of action, even though it is a new one, is the violation of a duty owed by the wrongdoer to the deceased," *Caskey v. Underwood*, 89 Ga. App. 418, 420 (1) (79 SE2d 558) (1953), citing *Atlantic, Valdosta & Western R. Co. v. McDilda*, 125 Ga. 468 (54 SE 140) (1906), "all defenses which could have been made against a decedent also bind the beneficiaries when they pursue a wrongful death claim." *Norton*, 300 Ga. at 738 (2).

> Although it is true that the action created by the wrongful death statute is different from the cause of action which the decedent would have possessed had he lived, *any defense which would have been good against the decedent is good against his representatives in a wrongful death action*. Thus, no recovery could be had unless the deceased in his lifetime could have maintained an action for damages for the injury to him, and . . . any defenses good as against the deceased would be good as against the action brought by the beneficiaries.

7

(Citation and punctuation omitted; emphasis supplied.) Id. at 738-739. Based on the above, not only was plaintiff required to "show a violation of some duty the [defendants] owed to her husband," but she was also "bound by the relations they had established between themselves by contract not illegal[.]" *Western & Atlantic R. Co. v. Strong*, 52 Ga. 461, 463, 467 (6) (1874) (reversing a jury verdict in favor of a widow when her husband was killed in the course of his employment with the defendant railroad where her husband had by contract assumed "all risk connected with . . . his position on the road," including accidents caused by his or other employees' or agents' negligence); see also *Fulton Bag & Cotton Mills v. Wilson*, 89 Ga. 318, 322 (1) (15 SE2d 322) (1892) (reversing a jury verdict in favor of a personal injury plaintiff when an employment contract "waived all rights to claim any damages for any injury received by him in [his] employment" except those arising from "criminal negligence").

The dispositive question we must answer is whether this contract's one-year limitation provision applies to this case and, if so, whether it is valid and enforceable. If so, plaintiff is "bound by the relations [the parties to the contract] had established between themselves," and her claim is time-barred. *Strong*, 52 Ga. at 467 (6).

8

With respect to the first issue, it is clear to us that the one-year limitation period does in fact apply to this case. "The cardinal rule of contract construction is to ascertain the intention of the parties. . . .When the terms of a contract are clear and unambiguous, the reviewing court looks only to the contract itself to determine the parties' intent." *Unified Gov't of Athens-Clarke Co. v. Stiles Apartments, Inc.*, 295 Ga. 829, 832 (764 SE2d 403) (2014). Here, plaintiff has asserted claims for wrongful death against BPG and its employee Golden. These claims sound both in tort and contract, although they all arise out of the contractual relationship between Mr. Omstead and BPG. The one-year limitation provision contained in the contract expressly applies to any "legal action, whether sounding in tort (even if due to our negligence or other fault), contract, arbitration or otherwise, against [BPG] or [its] employees." There is no ambiguity, and the contract is plain on its face. We accordingly reject plaintiff's argument that the one-year limitation provision does not apply.

When assessing the legality and enforceability of the limitation provision, it is settled law that "courts must exercise extreme caution in declaring a contract void as against public policy and may do so only where the case is free from doubt and an injury to the public clearly appears." (Citation and punctuation omitted.) *Innovative*

9

*Images, LLC v. Summerville*, 309 Ga. 675, 681 (3) (a) (848 SE2d 75) (2020).

"[U]nless prohibited by statute or public policy[,] the parties to a contract are free to contract on any terms and about any subject matter in which they have an interest, and any impairment of that right must be specifically expressed or necessarily implied by the legislature in a statutory prohibition and not left to speculation." (Citation and punctuation omitted.) *Piedmont Arbors Condominium Assn. v. BPI Constr. Co.*, 197 Ga. App. 141, 141 (397 SE2d 611) (1990); see also *Brainard v. McKinney*, 220 Ga. App. 329, 329 (1) (469 SE2d 441) (1996) (physical precedent only).

The parties have cited no statute declaring a limitation provision such as the one in this case void as against public policy, and we are aware of none. OCGA § 13-8-2 (a) contains a list of certain specified contracts that our legislature has declared to be void as against public policy, including contracts "tending to corrupt legislation or the judiciary," contracts "in general restraint of trade," contracts "to evade or oppose the revenue laws of another country," "wagering contracts," and contracts of "maintenance and champerty." Conspicuously absent from this list are contractual periods of limitation like the one in this case. Moreover, our precedent holds that such provisions are "generally enforceable under Georgia law[.]" *N4D, LLC v. Passmore*, 329 Ga. App. 565, 566 (1) (765 SE2d 717) (2014). More specifically, one-year and

six-month contractual limitation periods have long been held reasonable as a matter of law. See *White v. State Farm Fire & Cas. Co.*, 291 Ga. 306, 309 (2) (728 SE2d 685) (2012) (insurance policy's one-year limitation period was enforceable to bar plaintiff's claim); *SunTrust Mtg. v. Ga. Farm Bureau Ins. Co.*, 203 Ga. App. 40, 41 (416 SE2d 322) (1992) (an insurance contract's one-year limitation period for claims for "fire loss" was "valid and binding" on the insured); *Rabey v. Electric Co. v. Housing Auth. of Savannah*, 190 Ga. App. 89, 90 (2), (3) (378 SE2d 169) (1989) (contract's six-month limitation period was not "so unreasonable as to raise a presumption of imposition or undue advantage" and was thus enforceable); *Brown v. Savannah Mut. Ins. Co.*, 24 Ga. 97, 101 (2) (1858) ("No principle of public policy is violated by a condition in a policy of insurance, that the injured party shall sue within six months from the time of the loss or lose his remedy").

Against this weight of authority, the trial court relied on *Langley v. MP Spring Lake, LLC*, 307 Ga. 321 (834 SE2d 800) (2019), for its conclusion that the limitation period before us does not apply to plaintiff's claims. We are not persuaded, as *Langley* is readily distinguishable in at least two critical respects.

First, our Supreme Court emphasized that the plaintiff's tort claim in *Langley* did not arise from the parties' contractual relationship (i.e., the lease agreement that

11

contained a limitation provision) but rather arose from premises liability principles that were separate and distinct from the parties' lease contract. As the Court stated, the plaintiff's claim was best understood as "a premises-liability claim predicated on [the landlord's] status as a property owner and [the plaintiff's] status as an invitee on that property." Id. at 326. The Court explained:

> The relationship between an owner and an invitee is separate from the relationship between a landlord and a tenant. Those relationships involve distinct statutory duties – one sounding in tort, the other in contract – even though a person's status as a tenant may also make that person an invitee to the property.

Id. Here, while the plaintiff has asserted both tort and contract claims, all of those claims arise out of the contractual relationship between her husband and BPG. But for that contractual relationship, the defendants would have never inspected the Omstead home and, unlike the defendant in *Langley*, would have incurred no duties to plaintiff or her husband. Thus, all of the claims in this case arise out of the contractual relationship, a critical distinction from *Langley*.

Second, our Supreme Court emphasized that the limitation provision in *Langley* did not expressly state that it was applicable to tort claims and accordingly held that it should be limited to claims arising out of the lease agreement. Id. at 327.

12

Here, by contrast, the contract expressly provides that the decedent was barred from filing any "legal action, *whether sounding in tort (even if due to our negligence or other fault), contract, arbitration or otherwise,* against us or our employees more than one year after the inspection, even if you do not discover a defect until after that[.]" (Capitals omitted; italics supplied.) Thus, this contract contains the critical language that was missing in *Langley*. Given these two distinctions, *Langley* does not support the plaintiff's position and does not justify a refusal to enforce the contract as written. See *McCoury v. Allstate Ins. Co.*, 254 Ga. App. 27, 28 (1) (561 SE2d 169) (2002) (whole court) (contractual period of limitation was not limited to contract claims but also applied to tort claim "brought by the plaintiffs by virtue of their status as policyholders").

In her effort to align this case with *Langley,* plaintiff points to a number of sources for defendants' extracontractual duties, including Section 324A of the Restatement of Torts (Second) and OCGA § 8-3-331 *et seq.* These arguments are unavailing, as they focus on the wrong issue. The issue is not whether the defendants owed tort duties to the decedent. They most assuredly did. The issue is whether this court should enforce the contractual period of limitation that, on its face, applies to both tort claims and contract claims. Unlike the situation in *Langley*, all of plaintiff's

13

claims arise from the contractual relationship between her husband and BPG, and there are no duties not growing out of that relationship. Under these circumstances, there is no good reason why we should not enforce the contract's plain and unambiguous limitation provision. Whether or not the defendants owed duties otherwise cognizable in tort does not change our analysis and does not render the parties' contract unenforceable. See *McCoury*, supra.

Plaintiff also argues that the inspection agreement's limitation clause is void under OCGA § 13-8-2 (b), which provides:

> A covenant, promise, agreement, or understanding in or in connection with or collateral to a contract or *agreement relative to the construction, alteration, repair, or maintenance of a building structure, appurtenances*, and appliances, including moving, demolition, and excavating connected therewith, *purporting to require that one party to such contract or agreement shall indemnify, hold harmless, insure, or defend the other party* to the contract or other named indemnitee, including its, his, or her officers, agents, or employees, against liability or claims for damages, losses, or expenses, including attorney fees, *arising out of bodily injury to persons, death, or damage to property caused by or resulting from the sole negligence of the indemnitee*, or its, his, or her officers, agents, or employees, *is against public policy and void and unenforceable*.

(Emphasis supplied.) As our Supreme Court has noted, an indemnification provision is void under OCGA § 13-8-2 (b) "if it (1) *relates in some way* to a contract for 'construction, alteration, repair, or maintenance' of certain property *and* (2) promises to indemnify a party for damages arising from that own party's *sole* negligence." (Citation and punctuation omitted; emphasis supplied.) *Milliken & Co. v. Georgia Power Co.*, 306 Ga. 6, 9 (1) (829 SE2d 111) (2019).

Assuming without deciding that this provision "relates in some way to a contract for 'construction, alteration, repair, or maintenance' of certain property", it is not an indemnity agreement since it does not purport to shift the defendants' alleged liability to the decedent or the plaintiff. Rather, it is merely a limitation provision that contractually sets a deadline for the pursuit of claims. Accordingly, OCGA § 13-8-2 (b) has no application to this case.

In summary, we see no legally justifiable reason for invalidating the parties' contractual period of limitation that expressly applies to the claims asserted in this case. It is not our role to rewrite legally enforceable contracts or to legislate from the bench. Accordingly, we should refrain from proclaiming the existence of public policy provisions that our legislature has chosen not to enact and that run contrary to our precedent. Here, by its enactment of OCGA § 13-8-2, the General Assembly has

15

declared the public policy of the state with respect to those contracts that should not be enforced by the courts. It chose not to include limitation provisions like the one at issue here in that list. "It is fundamental that matters of public policy are entrusted to the General Assembly, [and] not this court." *Smith v. Robinson*, 355 Ga. App. 159, 161 (2) (842 SE2d 917) (2020) (citation and punctuation omitted). It is equally fundamental that"it is not for this Court to expand or contract the scope of the General Assembly's legislative enactments, unless the policy choices it makes by enacting statutes exceed its constitutional authority." *McEntyre v. Sam's East, Inc.*, 313 Ga. 429, 432-433 (2) (a) (870 SE2d 385) (2022). No constitutional claim has been made in this case, and under the circumstances present here, there is no justification for interfering with the public policy choices made by the General Assembly.

For all of these reasons, the trial court erred when it refused to enforce this contract's one-year limitation provision. We therefore reverse the grant of partial summary judgment to plaintiff and the denial of summary judgment to the defendants, and we remand with direction that the trial court enter summary judgment in favor of the defendants.

2. In light of our disposition of Division 1, we need not address the enforceability of this contract's cap on damages.

*Judgment reversed and case remanded with direction. McFadden, P. J., concurs. Barnes, P. J., concurs fully and specially.*

A22A1730. BPG INSPECTION, LLC et al. v. OMSTEAD.

BARNES, Presiding Judge, concurring fully and specially.

While I concur fully in the majority opinion, I write separately to urge the General Assembly to enact legislation prohibiting parties from contractually shortening the statute of limitation for bringing tort claims arising out of personal injury or wrongful death. It is true that Georgia has a strong public policy in favor of the freedom of parties to contract as they see fit. See generally *Nat. Cas. Co. v. Ga. School Bds. Assn.-Risk Mgmt. Fund*, 304 Ga. 224, 229 (818 SE2d 250) (2018) ("[I]t is the paramount public policy of this State that courts will not lightly interfere with the freedom of parties to contract on any subject matter, on any terms, unless

prohibited by statute or public policy, and injury to the public interest clearly appears.") (citation and punctuation omitted). But statutes of limitations are also a strong expression of public policy by our legislature in that they "serve the legitimate public policy goal of promoting justice and furthering the certainty of time limitations while preventing unfair surprise." (Citation and punctuation omitted.) *Langley v. MP Spring Lake, LLC*, 307 Ga. 321, 329, n. 4 (834 SE2d 800) (2019). And the General Assembly has decided that the statute of limitation for injuries to the person should be two years. See OCGA § 9-3-33. Contractual limitation clauses like the one in the present case, however, undermine that legislatively determined limitation period, and in my view, the General Assembly should act to prevent the enforcement of similar clauses in future cases.

Notably, with respect to arbitration, our legislature has enacted a statutory provision that prohibits agreements to arbitrate claims "arising out of personal bodily injury or wrongful death based on tort." OCGA § 9-9-2 (10). Enactment of a similar statutory prohibition in the context of contractual time-limitation clauses would give full force and effect to the two-year statute of limitation for personal injury and wrongful death claims, and it would help ensure that plaintiffs have a full and fair opportunity to litigate their claims and hold accountable the parties responsible for

their harm. Indeed, several of our sister states, recognizing the important public policy concerns at stake, have enacted statutes that even more broadly disallow contractual limitation clauses.[1] Accordingly, I encourage the General Assembly to take up the matter and enact legislation prohibiting contractual limitation clauses for personal injury and wrongful death claims, thereby preventing harsh outcomes like the one in this case.

---

[1] See, e. g., Ala. Code § 6-2-15 ("Except as may be otherwise provided by the Uniform Commercial Code, any agreement or stipulation, verbal or written, whereby the time for the commencement of any action is limited to a time less than that prescribed by law for the commencement of such action is void."); Fla. Stat. § 95.03 ("Any provision in a contract fixing the period of time within which an action arising out of the contract may be begun at a time less than that provided by the applicable statute of limitations is void."); Miss. Code Ann. § 15-1-5 ("The limitations prescribed in this chapter shall not be changed in any way whatsoever by contract between parties, and any change in such limitations made by any contracts stipulation whatsoever shall be absolutely null and void, the object of this section being to make the period of limitations for the various causes of action the same for all litigants."); S.C. Code Ann. § 15-3-140 ("No clause, provision or agreement in any contract of whatsoever nature, verbal or written, whereby it is agreed that either party shall be barred from bringing suit upon any cause of action arising out of the contract if not brought within a period less than the time prescribed by the statute of limitations, for similar causes of action, shall bar such action, but the action may be brought notwithstanding such clause, provision or agreement if brought within the time prescribed by the statute of limitations in reference to like causes of action.").